The opinion of the court was delivered by
Breaux, J.
Plaintiff seeks by mandamus to compel the defendant railroad company to haul special ears and run special trains in order to distribute poles, wires, and cross-arms between stations, enabling them thereby to hasten the construction of a telephone line between the city of .New Orleans and Shreveport. Relator avers that it owns its own right of way along the line of defendant’s road; that it requested it to receive its freight and transport it to points where it is needed; that the latter refused to transport these poles and other freight owing to an unlawful combination and conspiracy with the Western Union Telegraph Company, entered into contrary to public policy and in violation of the organic law of the State.
They further aver that defendant, as a public carrier, is bound by its charter to treat all alike. The defendant, on the other hand, controverts plaintiff’s right to the writ of mandamus on a number of grounds filed in their answer to the proceedings. They are clearly set forth in respondent’s assignment of errors, which, after having made a summary of the evidence, we will note. As. relates to the testimony, it appears that relator, by letters, and through one of its clerks, requested the defendant to receive its freight. To this request no answer was given except that filed in this suit, to which we have before referred.
Relator in its petition says that respondent could perform the services required of it by relator without great loss or inconvenience either to it or the traveling public or to those for whom it carries freight; that this loss and inconvenience can be avoided by distributing between trains, that is between *1852 the times of trains, and avoiding passing trains by switching its construction train to a side track; that this can be managed with safety and the construction train kept out of the way of regular trains by giving notice, usually given to such trains by dispatches; that there are switches and sidings between the regular stations on which trains stop to get out of the way of other trains; that the material can safely and without inconvenience be delivered between stations by running the construction train atj a moderate rate of speed and stopping at every one hundred and fifty feet, at which distance it is needed by relator for the construction of its line; ijhat this manner of doing this work is not extraordinary at all, and while it is being done the train can he controlled and the work done with perfect safety; that by the exercise of sound judgment the poles and other materials are thrown out at every one hundred and fifty feet on the line without the least danger; that the delivery would not- be entirely unusual on defendant’s road as it delivers freight where there is no station. There is testimony showing that on a number of railroads materials such as poles, cross-arms and insulators were delivered in the same manner as it is proposed by relator to deliver and distribute its materials along the line. This distribution was done on a special distribution train which was not unwieldy, and was not in the way of other trains. The testimony sets forth that relator would be greatly benefited by the service for which it sues, for the reason that the country through which its line runs is partly swamp covered with water three or four feet deep in some places, and there is also much underbrush and trees through which it is impossible for a human being to carry freight. It appears that defendant delivered . some of relator’s materials at stations. The disagreement relates to the pole places between stations. The witnesses for relator, and fhere are a number of them, all agree in the statement that the work in question can be performed by the respondent without incovenience or loss.
Defendant examined only one witness, its freight agent. He denies that an actual and physical tender was made by relator for transportation of freight for distribution between stations. He says that he apprehended danger if materials were thrown off from trains moving at a rate of more than two and a half miles an hour. His theory is, if, in throwing off poles say thirty or forty feet long, weighing six or eight hundred pounds, there happened to he some mistake made, it might fall under the train instead of on the side and derail it or go through the *1853 car. He mentioned other possible dangers in this work and said that there was an element of danger, because, being an irregular train on the line, it might result in a collision between itself and a regular train.
The judge of the District Court made the writ of mandamus peremptory and ordered respondent to receive from, and transfer and deliver for, relator the poles, cross-arms and other materials offered for shipment by relator for the purpose of building its telephone line along the line and route of defendant’s railroad from the places mentioned in the judgment, and particularly, in the swamp and other inaccessible places between the points mentioned. The power was recognized in the defendant company of regulating the time, order and manner of delivery so as not to interfere with their regular business and passenger traffic and to charge just and proper payfñent for the service.
From the judgment, respondent appeals and assigns a number of errors in the judgment, which we will pass upon in the order in which they are stated in respondent’s brief.
The first error assigned assails the judgment as erroneous on grounds included in the different assignments of error following it. The second assignment sets forth that the court erred in proceeding with the trial of the cause against appellant’s exception, after the cause had been removed to the United States Circuit Court for the Eastern District of Louisiana and improperly remanded by the United States Courts to the State Courts. Defendant especially claimed its federal right under the Constitution of the United States. The Circuit Court of the United States remanded the case to the State Courts for the reason that the defendant corporation is a Louisiana one, operating in Louisiana. This fact is not denied by defendant. The ground of objection is that it was erroneously remanded because the action is removable under the Judiciary Act of 1887. We have read the Act, bearing in mind defendant’s contention, and have not found that its cause comes within that act. It was within the cognizance of the District Court. We understand that this corporation has been created by the laws of the State in addition to the corporate powers it claims under United States law. The removal was not sustained by any law to which • the defendant referred, and now that it is before us on appeal we have not been informed under which of the different sections of the law invoked defendant claimed the right to remand. We have not found any provision to sustain its removal.
*1854 In the next place, we are informed by the appellant that the Texas and Pacific Railway Company is established by Congress to connect the Atlantic and Pacific oceans by a military and post road, and that no law of any State shall be sanctioned which impedes it, and that the ruling and judgment of the District Court unlawfully contravenes this federal right.
It does not appear from the evidence that appellant’s road as a military or post road will be impeded or interferred with in any manner by the proposed service. All the witnesses, except one, sustain the averment, that not only will the appellant not in any manner be impeded as a post road but that its business will not in any manner at all be interfered with, and that under proper management, and none other is contemplated as we take it. Even the appellant’s witness, to whom we have just referred, in answer to the following question: “If I were to call upon you as a man in authority and say to you, 'I want to hire through you from your railroad company one or more flat cars, to be taken out by your engineer and under your supervision and entirely suiting your convenience, in order to dump poles, how could that interfere with traffic arrangements and how could you deny me that right? You can not answer that question,’ ” answered: — “No.”
At this point, appellant’s counsel, claiming all of its federal rights, as conferred and required by Congress in different acts, contend with great earnestness and clearness that a writ of mandamus to compel a railroad company to do a particular act in constructing its road bed and buildings, or in running its trains, can be issued only when there is a specific duty on its part to do the act and a clear proof of the breach of that duty, citing Northern Pacific Railroad Company vs. Washington, 142 U. S. 492. The issue in the cited case was whether the court could compel the respondent by a writ of mandamus to erect and maintain a station house at a point named, and the language of the court should be read with reference to that issue, presenting an entirely different state of facts from that before us for decision in the present ease. The court held in the cited case that the railroad company could not be compelled to erect and maintain stations, and the court, pursuing the question further in that connection, said that there was no specific legal duty on its part to do that act, and, therefore, mandamus did not lie.
Here, different from the cited case, we take it that the purpose is to *1855 maintain similar service as that rendered to the Western Union Telegraph Company, a corporation entirely independent of the appellant, and using the telegraph line along the route of the Texas and Pacific Railroad Company, as made evident by the return of property made for taxation by the respondent. The evidence shows that telegraph poles and other materials were delivered from slowly moving trains on defendant’s road. As the defendant owns no telegraph line along its track in Louisiana, it follows that they must have delivered the materials to the Western Union for the repair and improvement of its line. The evidence shows that other companies and this company too, we may say, have carried freight to points other than stations. The law applying has made it the specific duty of carriers to serve all alike. Favors and preference are to be avoided. A common carrier cannot carry for one and refuse to carry for another. A railway is without right to grant privileges where the public is concerned. “If the company possessed this right, it might build up one set o'f men and destroy another, advance one kind of business and break down another, and make even religion or politics the test in the distribution of its favors”, quoted from Sanford vs. Railroad Company, 24th Penn. 382, in Chicago, Northern Railroad Company vs. People, 8th American Reports, 690, in which the court maintained a writ of mandamus compelling the company to perform the service requested. “The business of the common carrier is for the public and it is his duty to serve the public indifferently. ILo is entitled to a reasonable compensation, but, on payment of this, he is bound to carry for whomsoever will employ him, to the extent of his ability.” Messenger vs. Railroad Co., 1 American Reports, 756. The services to be rendered by a common carrier exclude the right to give special preference. Messenger vs. Railroad Company, 37th N. J. L. 531, citing The New England Express Company vs. Maine Central Railroad Company, 57 Maine, 1986.
This brings us to the objection urged by the defendant in support of the assignment of error arising from the asserted attempt to take away a valuable right of property vested in appellant, without due process of law. It being the duty of the appellant not to discriminate in its service to thd public and to serve all impartially, a decree requiring service without discrimination is not the taking away of a valuable right of property, but is the enforcement of a duty.
Under the laws, as we take them, the appellant is expected to give *1856 good reasons for not serving one who offers to pay afiy reasonable amount required for the service. We have not found good reasons for its refusing' to serve relator. It is not proposed to interfere in any manner with the traffic, or other business of the company. From this point of view there is no interference with the right of property. It is not an arbitrary exercise of the powers of government. It is due process of law.
The other assignments of error, in the order in which they were argued, the fifth and sixth, are considered and passed upon together. Appellant sets forth in these assignments that it is elementary that no action for damages can be maintained against a common carrier, nor can mandamus lie unless the carrier has been put in default in some one of the methods known to the law. We do not disagree with counsel’s view of the law on this point, but it must be conceded that one may waive the tender either expressly or tacitly, also that one cannot be expected to do vain things. In addition to the proof of repeated requests made by relator for the transportation of its material, the traffic manager testified that the appellant would have refused to hire engine and cars to the relator for the purpose of transporting' telegraph poles and materials. It would only have been a waste °of time and a useless expenditure of money to have made a physical tender of cars and material therein. Under the circumstances, the steps taken by the relator were equivalent to a physical tender of ears to respondent company.
We pass to the seventh, eighth and ninth assignments, considered together. Appellant contends, in support of its position, that there was no law authorizing the lower court to render a judgment making the mandamus peremptory; that it never held itself out as a common carrier to distribute freight between stations, and1 that even if it has now and then chosen to deliver freight at a platform, a flag- station, or a road crossing, that does not authorize any one else to compel the railroad to repeat such an act. As thus, stated, it may be that mandamus would not lie, but here we think the case presents different conditions. Relator seeks to compel the performance of the same service as that per formed for a rival company, in order that it may compete in its line of business. As between these two companies, the evidence shows that discrimination would be the resullt. One company would be given the opportunity to live and prosper, while the other, as relates to this line, *1857 must go out of existence. This, we think, may be prevented by way of mandamus.
Appellant states further in the brief that the fact that it wishes to distribute poles and cross-arms, etc., between stations, to the end that a telegraph line on its right of way may be constructed and repaired, does not impose any legal obligation on it to distribute freight for other people; that it simply amounts to a necessary repair or construction of one of the necessary appliances of a railroad and does not differ from the distribution of its ties and rails. Here again we. are not inclined to differ greatly from counsel. Our conclusion would be different if appellant had only provided facilities to repair or reconstruct its own line, but we have seen that the line is not owned by the appellant and the service of thfe Western Union is separate apd distinct from that of the appellant. We Lave carefully examined each of the references cited by appellant, but we have not found that they sustain any position which must result in discrimination between conflicting interests.
Our attention is called by counsel to the fact that a rigid distinction has always been made in the Constitution of Louisiana between administrative power on the one hand and judicial power on the other; that during current years, in one way or another, large administrative powers have grown up in the United States, the creation of which has been suggested by the experience of France, Germany and England, and that railroad commissioners have been vested with the authority to inquire into matters such as these here involved. We think it answer enough to state that there is a controversy between relator and respondent involving a right valued at more than two thousand dollars, and that the organic law vestk this court with jurisdiction to decide such controversies. The right claimed, and the questions involved are within the court’s jurisdiction. We would notlbe justified in declining to exercise our jurisdiction in a matter which no court has ever declined to consider, on the ground urged by appellant, when the facts are as they are here.
Appellant with great confidence, avers that a federal question is involved.
We have not given the question of federal jurisdiction very much thought, and express no opinion upon it. If there is a federal question involved, the Supreme Court of the United States will give the matter consideration and rectify the error, if error there he, in our view of the law.
*1858 This is the second decision rendered on this line in recent times. We have found no reason to change our views from those expressed in the first, Cumberland Telephone and Telegraph Company vs. Morgan’s Louisiana and Texas Railroad Co., 51st Ann. 29.
It is therefore adjudged, ordered and decreed that the judgment appealed from be and the same is hereby affirmed.
Blanchard, J.
Rests his concurrence upon the ground that defendant company having performed, and continuing to preform, the same service, herein demanded, for the Western Union Telegraph Co,. cannot be permitted to discriminate, and owes the duty of performance to relator, and this duty, being of a nature public, may be enforced by mandamus.