## AUGUSTA BROKERAGE COMPANY *v.* CENTRAL OF GEORGIA RAILWAY COMPANY.

1. The Railroad Commission of this State, under the authority to make "such just and reasonable rules and regulations as may be necessary for preventing unjust discriminations in the transportation of freight," has power to promulgate a rule requiring railroad companies, in the conduct of their intrastate business, to "afford to all persons equal facilities in the transportation and delivery of freight, without unjust discrimination against any."

2. In a suit for damages sustained on account of a violation of the rule above referred to, exemplary damages may be recovered, if it appears that the conduct of the company amounted to a "wilful violation of law;" and therefore allegations of the petition which, if proved, would throw light on the question as to whether the conduct of the company was wilful, should not be stricken as irrelevant and impertinent.

3. The special demurrers were not well taken; and the petition setting forth a cause of action, it was error to sustain a motion to dismiss.

Argued October 5, — Decided October 15, 1904.

Action for damages.    Before Judge Eve.    City court of Richmond county.    July 5, 1904.

This was an action by the Augusta Brokerage Company, a firm engaged in the general brokerage business in the city of Augusta, including the buying and selling of cottonseed, against the Central of Georgia Railway Company.    The allegations of the petition were, in substance, as follows:    Prior to the wrong herein complained of, the Railroad Commission of Georgia promulgated the following reasonable rule, the same being a part of Rule 36:    "The several railroad companies in this State, in the conduct of their intrastate business, shall afford to all persons equal facilities in the transportation and delivery of freight, without unjust discrimination against any."    In December, 1903, the plaintiff shipped to Augusta, from a station on the line of the defendant's road, a car of cottonseed, and when the car arrived in Augusta a member of the plaintiff's firm presented to the proper officer of the defendant the bill of lading and requested that the car be delivered on the side-track at the plaintiff's warehouse.    This request was refused.    It is now, and has been for years, the common practice of the defendant and other railroad companies at Augusta to make delivery of car-load lots of freight at any point in the city on their own tracks, or on any line of tracks connecting with their own.    No refusal to so deliver has been made by the defendant to any of its customers except the plaintiff; and the defendant has never refused to make such delivery to the plaintiff of any other commodity in car-load lots, except cottonseed, but almost daily makes delivery at the plaintiff's warehouse of car-load lots of hay, grain, etc.    It is also the common practice of the defendant to make delivery of cottonseed to the warehouses of all the cottonseed-oil mills at Augusta, having tracks connecting with tracks of defendant.

4

The refusal of the defendant to make delivery of the car-load of cottonseed above referred to, at the plaintiff's warehouse, was a denial to the plaintiff of "equal facilities in the transportation and delivery of freight," and was an "unjust discrimination" against the plaintiff, in violation of Rule 36.   In consequence of defendant's failure to deliver the car-load of cottonseed plaintiff was put to an expense of $5.00, and claims this sum as actual damages.   On numerous occasions during the current cottonseed season of 1903, defendant has refused to allow cars loaded with cottonseed belonging to the plaintiff to be delivered to connecting roads at Augusta for reshipment in bulk, although such reshipment of cars was freely allowed to others, and such reshipping facilities were afforded to plaintiff in the case of cars loaded with lumber, etc., or any other article of merchandise except cottonseed.   This refusal was likewise a violation of Rule 36 of the Railroad Commission.   In consequence of such refusal, the plaintiff has incurred an expense of $54, which it claims as actual damages.   In addition to the foregoing averments, it was also alleged that the refusal of defendant to afford equal facilities with others was a part of a predetermined plan to drive the plaintiff out of the business of buying cottonseed in sections of the country tributary to Augusta, at points on the line of the defendant's road; that defendant's commercial agent notified the plaintiff in writing, in the early part of 1903, that he would see to it that the plaintiff did not do any cottonseed business on the defendant's road; that when requested for cars, in November, 1903, the defendant's agent gave as an excuse a scarcity of cars, but when the plaintiff secured cars from another road and offered them to him, he admitted that he was fighting to prevent the plaintiff from buying cottonseed on the defendant's road; that the defendant's agent told a member of the plaintiff's firm that he intended to break up the plaintiff's cottonseed business, because certain oil mills in the vicinity had agreed to ship over the defendant's line a ton of cottonseed products for every ton of cottonseed brought to them over the defendant's road; that as a further illustration of the defendant's purpose, it refused to issue to the plaintiff through bills of lading from a station in Burke county, to certain points, notwithstanding it was its common practice to issue through bills of lading to such points for general

merchandise; that the defendant's action has resulted in giving a monopoly to the oil mills, as a result of which cottonseed is worth $5.50 per ton less than on the same date last year, when the plaintiff was in the market enjoying equal facilities. These acts of the defendant, in denying the plaintiff equal shipping facilities and in making unjust discriminations against it, are characterized as wilful violations of the law, and, it is alleged, render defendant liable for exemplary damages. Damages are claimed in the sum of ten thousand dollars.

At the appearance term the defendant filed a special demurrer to those portions of the petition last referred to, upon the ground that they were irrelevant, immaterial, and impertinent; and also upon the ground that if there was a refusal to issue through bills of lading as alleged, such refusal occurred in Burke county, and the city court of Richmond county had no jurisdiction. At the trial the defendant moved to dismiss the case, upon the ground that the petition set forth no cause of action. This motion and the special demurrer were sustained. The plaintiff excepted.

*William H. Fleming*, for plaintiff.
*Lawton & Cunningham* and *J. C. C. Black*, for defendant.

COBB, J. (After stating the foregoing facts.) If the Railroad Commission had authority to adopt that portion of Rule 36 set forth above, the petition set out a cause of action. The law declares that the railroad commissioners " shall make reasonable and just rules and regulations, to be observed by all railroad companies doing business in this State, as to charges at any and all points for the necessary handling and delivery of freights; shall make such just and reasonable rules and regulations as may be necessary for preventing unjust discriminations in the transportation of freight and passengers on the railroads in this State; . . and shall make just and reasonable rules and regulations, to be observed by said railroad companies on said railroads, to prevent the giving or paying of any rebate or bonus, directly or indirectly, and from misleading or deceiving the public in any manner as to the real rates charged for freight and passengers." Civil Code, § 2189. The rule of the commission provides that railroad companies, in the conduct of their intrastate business, shall afford to all persons " equal facilities in the transportation

and delivery of freight, without unjust discrimination against any." The commission is authorized by the very terms of the act to make any reasonable rules that may be necessary to prevent unjust discriminations in the transportation of freight; and to allow to one shipper privileges which are not allowed to another whose situation is substantially the same is unquestionably an unjust discrimination. It is said, though, that, even conceding this to be true, the railroad commission is authorized simply to make rules in reference to the transportation of freight; that transportation ends when the goods arrive at the terminal station of the railway company at the point of destination; that a regulation dealing with the conduct of the carrier after the goods have reached such station is not a regulation of transportation, but a regulation of the use of terminal facilities; and that therefore the rule which deals with discriminations as to facilities should not be construed to refer to facilities which are brought into operation after the transportation service has been completed. The case of *Dixon* v. *Central of Georgia Railway Company*, 110 *Ga.* ·173, is cited to establish the proposition that there is a distinction between a transportation service and switching or transfer service, and that the service which was withheld from the plaintiff in the present case was a switching or transfer service, and not a transportation service. There is nothing in that case which holds that where a railroad company, as a result of either a contract or a custom, delivers from its terminal station loaded cars on a side-track at the place of business of a consignee, it is not, when so engaged, performing duties incident to transportation of freight; but it was simply held that, construing what was then rule 25, in reference to the rate to be charged for switching or transferring cars from a point on one road to a connecting road or warehouse within the space of three miles, in connection with the rules regulating rates of freight ordinarily to be charged, the ordinary rates of freight were allowable until the car reached the terminal station at destination, and that rule 25 was operative from such station to the point where such car was delivered to the connecting road, place of business, or warehouse. The court was not dealing with the word " transportation " as found in the act, and the expression " transportation service " was used for conven-

ience, simply to distinguish the service performed before the terminal station was reached and the service performed between the terminal station and the connecting road or warehouse. If a railway company carries freight beyond its terminal station, when this service is performed, either voluntarily or as the result of a contract or custom, it is no less engaged in the transportation of freight than it was when the freight was being carried between the initial point of carriage and the terminal point of carriage; and the words "transporting" and "transportation," which occur in the rule under consideration in the *Dixon* case, are there used in this very sense.     See 30 Rep. R. Com. 31.

It is contended that the power of the Railroad Commission in reference to unjust discriminations is confined to rates and charges; and the case of *State* v. *Wrightsville & Tennille R. Co.*, 104 *Ga.* 437, is cited to sustain this contention.     There is, however, no authoritative ruling in that case to the effect that the power of the Railroad Commission is so limited.     It was there held that the refusal of the railroad company to issue a through bill of lading over the line of one of its connecting carriers, when it was in the habit of issuing such bills of lading over the line of another connecting carrier, was not a violation of Rule 32 of the commission (see 30 Rep. R. R. Com. 32), which contained substantially the provisions of the act of 1874, as contained in the Civil Code, §§ 2212–2214.     It was held that the Railroad Commission had no power, either under the act referred to or under the rule, to compel a railroad company to make a contract.     There is nothing in that decision, when taken in the light of the question then under consideration, which can be construed into a ruling that the word "transportation," as used in the clause of the act now under consideration, included only service rendered between the initial point of carriage and the terminal station of the railway company at the point of destination.     Having reached the conclusion that the authority of the Railroad Commission to make rules and regulations for preventing unjust discriminations in the transportation of freight authorized the promulgation of Rule 36, it is unnecessary to determine whether the withholding of service of the character withheld from the plaintiff in the present case, when such service was rendered to other customers similarly situated, was such an indirect giving

of a bonus to the other customers as to be an unjust discrimination in rates and charges. The commission had authority to make the rule; the conduct of the railroad company was in violation of the rule; and it was therefore error to sustain the motion to dismiss the petition.

It was also erroneous to sustain the special demurrer, for the reason that those portions of the petition which were attacked by the special demurrer were not allegations in relation to the cause of action, but were simply averments of matters of aggravation which might be proved and considered by the jury in determining whether the conduct of the railroad company had been so wilful as to authorize the assessment of exemplary damages under the provisions of the Civil Code, § 2197.

During the argument attention was called to the fact that in the 31st Report of the Railroad Commission of Georgia the rules appear to have been amended and rearranged, and what was originally Rule 36 has become Rule 2, and that the language of the rule had been changed. See page 20. It does not appear from the published report when these changes were made, but an examination of the minutes of the Railroad Commission shows that the change in Rule 2 did not take effect until May 1, 1904, and therefore Rule 36 was in force at the time of the transactions complained of in the petition. It would seem, upon principle, that we should take judicial notice of what appears upon the minutes of the Railroad Commission as to the promulgation of its rules and regulations; but we now make no authoritative ruling on this question. If we can take judicial notice of what appears on such minutes, it appears therefrom that Rule 36 was in force at the time of the injury complained of. If we can not take such judicial notice, we must look to the petition, and the petition avers that Rule 36 was in force at the time in question.

*Judgment reversed. All the Justices concur.*