THE STATE OF FLORIDA, EX REL. W. H. ELLIS, ATTORNEY GENERAL, RELATOR, v. THE ATLANTIC COAST LINE RAILROAD COMPANY, A CORPORATION, RESPONDENT.

1.   Where a railroad company, a common carrier, is engaged in voluntarily transporting and delivering between stations on its line, employes and freight for one incorporated public telegraph company and refuses similar services to others, without giving sufficient excuse for such refusal, the railroad company as a common carrier is guilty of unjust discrimination, and may be compelled to perform like services, for a reasonable compensation, for another incorporated public telegraph company, even though the service being voluntarily rendered is under a contract, when it is not shown that such service differs from that performed by the railroad company as a common carrier for other shippers except as to delivery between stations.

2.   Where a railroad company, as a common carrier, renders services to one corporation so as to enable it to serve the public, and, without sufficient excuse, refuses to render similar services to another corporation lawfully authorized to likewise serve the public, it is an unjust discrimination, which the railroad commissioners have the power under the Constitution and laws of this State to make just and reasonable rules and regulations to prevent.

3.   Rules and regulations made by the railroad commissioners to prevent unjust discriminations or other abuses by railroad companies are by law deemed and held to be *prima facie* reasonable and just; and, in the absence of a showing of unreasonableness, the enforcement of such rules and regulations against a railroad company will not, of itself, be a taking of property without due process of law, or deprive such railroad company of the equal protection of the laws.

4. A contract for transportation made by a railroad company is subject to the provisions of the Constitution and laws existing when the contract is made.

The demurrer of Relator to the return of the Respondent sustained, and the peremptory writ awarded.

This case was decided by the Court En Banc.

This is a case of original jurisdiction.

## STATEMENT.

An alternative writ of mandamus upon the relation of the Attorney General issued from this court against the Atlantic Coast Line Railroad Company to enforce an order of the Railroad Commissioners of the State under the provisions of Chapter 4700, Acts of 1899. The alternative writ states that upon complaint, notice of hearing, failure to appear, and after consideration, the Railroad Commissioners did find and determine that the Atlantic Coast Line Railroad Company was guilty of an unjust discrimination by transporting and distributing for the Western Union Telegraph Company its men, wire, poles, and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line of wire along said railroad line in this State and by refusing to perform like services for any and all other telegraph and telephone companies, in violation of Chapter 4700 of the Laws of Florida; that the Railroad Commissioners did thereupon order and adjudge that such unjust discrimination be discontinued and that said Atlantic Coast Line Railroad Company be required to haul and distribute between its stations, on and along its line of railroad in the State of

Florida, for any and all telegraph and telephone companies, their men, wire, poles and other material, for the erection, maintenance, operation, repair, construction and reconstruction of their lines of wire, and that the said Atlantic Coast Line Railroad Company for such services performed and rendered may charge certain rates fixed and promulgated by a specified general order of the Railroad Commissioners; that the Postal Telegraph-Cable Company, a corporation, having condemned and acquired a right of way and easement to construct a line of poles and wires upon the right of way of the Atlantic Coast Line Railroad Company, applied to and demanded of the said Atlantic Coast Line Railroad Company to haul and distribute between its stations on and along its line of railroad, between the city of Jacksonville and the city of Lakeland, in certain counties of the State of Florida, for the Postal Telegraph-Cable Company, its men, poles, wire and other material for the erection, construction, maintenance and operation of its telegraph line between said points, and offered to pay for such services the rate fixed and promulgated by the Railroad Commissioners, but the said Atlantic Coast Line Railroad Company refuses to receive, and haul and distribute between its stations, on and along its line of railroad, from Jacksonville to Lakeland, the men, poles, wire and other material of the Postal Telegraph-Cable Company under the said order of the Railroad Commissioners; that upon such refusal of the Atlantic Coast Line Railroad Company to comply with the order aforesaid an order was passed by the Railroad Commissioners requesting and directing the Attorney-General to institute proceedings to enforce compliance by the Atlantic Coast Line Railroad Company with the or-

der of the Railroad Commissioners aforesaid in behalf of the said Postal Telegraph-Cable Company.

A demurrer to the alternative writ was overruled. State *ex rel.* v. Atlantic Coast Line Railroad Company, 51 Fla. 578, 40 South. Rep. 875.

The return of the respondent to the alternative writ states that:

(1) The respondent admits that it is transporting and distributing for the Western Union Telegraph Company its men, poles and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line along respondent's line of railroad operated in the State of Florida, and refuses to perform a like service for all other telegraph and telephone companies, but avers that it is not guilty of discrimination thereby, nor subject to any order of the Commission in regard thereto, by reason of the fact that the respondent has never held itself out, and does not hold itself out, as a common carrier to distribute freight between stations, nor to carry passengers to points between stations, nor to furnish cars to effect the distribution of freight or passengers, or both, between stations, and that such service forms no part of the duty of a common carrier, and that the distribution of freight between stations and the carrying of passengers to points between stations, and the furnishing of cars for the distribution of freight and the discharge of passengers at points between stations, is solely a subject of contract; and that in pursuance of its constitutional and legal rights, the respondent, together with other roads in said contract mentioned, on the 14th of October, 1902, entered into a contract which is still subsisting and unexpired, with the Western Union Telegraph Company, a corporation under the laws of the State of New York, for

transporting and distributing for the said Western Union Telegraph Company its men, wire, poles and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line of wire along respondent's road in the State of Florida, for certain mutual considerations and mutual benefits to flow to and be derived by each of the contracting parties. The contract is set out in full in the return. It provides for mutual services and compensations. Among its provisions is the following:

"Fifth. The railroad companies respectively agree to transport, free of charge, over their railroads, upon application of a superintendent or other general officer of the telegraph company, all persons in the employ of the Western Union and International Ocean Telegraph Companies, or either of them, when traveling on the business of either or both of said companies; and also to transport free of charge, along the lines of their various railroads, and to distribute wherever reasonably required, all poles, wire, cross-arms and other material and supplies of said Western Union and International Ocean Telegraph Companies, for the construction, maintenance, operation, repair and reconstruction of the land lines and wires of either or both of said telegraph companies, along said railroads covered by this agreement, and of such additional wires and lines of poles and wires as may be erected under the provisions of this agreement. * * * And unless thereto required by lawful authority, from which no reasonable recourse may be had, the railroad companies will not transport men or material for the construction, maintenance or operation of a line of poles and wire or wires, or underground or other telegraph line in competition with the lines of the telegraph company, party

hereto, except at and for the railroad companies' regular local rates, nor will they furnish for any competing telegraph line any facilities or assistance that they may lawfully withhold, nor stop their trains, nor distribute material therefor at other than regular stations.

PROVIDED, ALWAYS, that in protecting and defending the exclusive grants conveyed by this agreement, the telegraph company may use and proceed in the name of the railroad companies, or either of them, or any of the companies controlled by them, or any of them, but shall indemnify and save harmless the railroad companies, and each of them, and said companies controlled by them or any of them, from any and all damages, costs, charges and legal expenses incurred therein or thereby." The respondent says that whereby and by virtue of the terms and stipulations of said contract the relation of the respondent to the Western Union Telegraph Company is not the relation of carrier to shipper, but wholly contractual, and of such dependent and mutual character with considerations of such kind and character that it would be impossible for the Postal Telegraph-Cable Company to give the same consideration or the same equivalent to respondent that is given by and received from the Western Union Telegraph Company for the mutual services performed as are more fully set forth in said contract, and that the enforcement of said order of the Florida Railroad Commission would result in violating the contractual rights of respondent and in depriving respondent of its property without due process of law, and of the equal protection of the laws, contrary to the guarantees of the Constitution of the United States and the amendments thereof.

(II) The respondent admits that it is transporting and distributing for the Western Union Telegraph Company

its men, wire, poles and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line along respondent's line of railroad operated in the State of Florida, and refuses to perform a like service for all other telegraph and telephone companies, but avers that it is not guilty of discrimination thereby, nor subject to any order of the Commission in regard thereto by reason of the fact that the respondent has never held itself out, and does not hold itself out as a common carrier to distribute freight between stations, nor to carry passengers to points between stations, nor to furnish cars to effect the distribution of freight or passengers, or both, between stations, and that such service forms no part of the duty of a common carrier, and that the distribution of freight between stations and the carrying of passengers to points between stations and the furnishing of cars for the distribution of freight and the discharge of passengers at points between stations is solely a subject of contract; and that in pursuance of its constitutional and legal rights the respondent, together with other roads in said contract mentioned on the 14th of October, 1902, entered into a contract which is still subsisting and unexpired with the Western Union Telegraph Company, a corporation under the laws of the State of New York, for transporting and distributing for the said Western Union Telegraph Company its men, wire, poles and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line of wire along respondent's road in the State of Florida, for certain mutual considerations and mutual benefits to flow to and be derived by each of the contracting parties. (The contract is again set out in full in the return.)

(III.) The respondent admits that it is transporting

and distributing for the Western Union Telegraph Company its men, wire, poles and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line along this respondent's line of railroad operated in the State of Florida, and refuses to perform a like service for all other telegraph and telephone companies, but avers that it is not guilty of discrimination thereby, nor subject to any order of the Commission in regard thereto, by reason of the fact that the respondent has never held itself out and does not hold itself out as a common carrier to distribute freight between stations nor to carry passengers to points between stations, nor to furnish cars for the distribution of freight or passengers, or both, between stations, and that such service forms no part of the duty of a common carrier and that the distribution of freight between stations, and the carrying of passengers to points between stations, and the furnishing of cars for the distribution of freight and the discharge of passengers at points between stations is solely a subject of contract; and that in pursuance of its constitutional and legal rights, the respondent, together with other roads in said contract mentioned on the 14th of October, 1902, entered into a contract which is still subsisting and unexpired with the Western Union Telegraph Company, a corporation under the laws of the State of New York, for transporting and distributing for the said Western Union Telegraph Company its men, wire, poles and other material for the erection, maintenance, operation, repair, construction and reconstruction of its line of wire along respondent's road in the State of Florida for certain mutual considerations and mutual benefits to flow to and be derived by each of the contracting parties; and by virtue of the terms and stipulations of said contract the re-

654    SUPREME COURT OF FLORIDA.

Sta.e ex rel. Atty. Gen. v. A. C. L. R. R. Co.—Statement of Case.

lation of the respondent to the Western Union Telegraph Company is not the relation of carrier to shipper, but wholly contractual, and of such a dependent and mutual character and with such considerations of such a character that it would be impossible for the Postal Telegraph-Cable Company to give the same consideration or the same equivalent to this respondent that is given by and received from the Western Union Telegraph Company for the mutual services performed as are more fully set forth in the contract, and is performing the service for the Western Union Telegraph Company under and by vertue of said contract, and avers that it has always been willing and is now ready and offers hereby to transport and carry the same material for the Postal Telegraph-Cable Company mentioned in the alternative writ as being carried for the Western Union Telegraph Company at and for this respondent's regular local rates for the article or commodity shipped from and to regular stations on respondent's line of railroad in the State of Florida that may be offered in the ordinary and usual way in which shipments are tendered, and is now willing and has always been willing so to do and now offers to transport any and all of the employes of the Postal Telegraph-Cable Company for this respondent's regular legal rates to and from any regular station on respondent's line of railroad in the State of Florida, on its trains running to and from the stations that the said employe or employes may desire to go or depart from, and refers to and hereby makes the contract as set forth between respondents and the Western Union Telegraph Company a part of this return; whereby and by virtue of the terms and stipulations of said contract the relations of this respondent to the Western Union Telegraph Company is not the relation of carrier to shipper,

but wholly contractual, and of such a dependent and mutual character with considerations of such kind and character that it would be impossible for the Postal Telegraph-Cable Company to give the same consideration or the same equivalent to this respondent that is given by and received from the Western Union Telegraph Company for the mutual services performed as are more fully set forth in said contract.

And respondent avers that it had a right to contract as it has done and that the said contract does not contravene or violate any laws of the State of Florida and that the setting aside and making void said contract is not within the power of the said Railroad Commission of the State of Florida, and not within the scope or contemplation of the act of the Legislature of the State of Florida creating and constituting said Railroad Commission and the powers of said Commission as therein defined.

The relator demurred to this return on the grounds that:

(I) It has already been determined in this proceeding that the order made by the Railroad Commissioners which, by this proceeding, is sought to be enforced was a valid exercise of the powers possessed by the Railroad Commissioners under the laws of this State, and that question being *res adjudicata* cannot again be raised by respondent.

(II) The Railroad Commissioners have judicial powers under the Constitution and the law creating them and having determined, after hearing, of which respondent was duly notified, that the respondent was guilty of unjust discrimination in the respects recited in the order sought to be enforced such order is an adjudication of that question which cannot be reviewed by this court.

(III) The making of the order sought to be enforced

was an exercise of the powers possessed by the Railroad Commissioners under the law creating them, and under such law the said order is *prima facie* reasonable and just, and the return of the respondent does not deny or question its reasonableness or justness.

(IV) The transportation and distribution for the Western Union Telegraph Company of its men, wire, poles and other material for the erection, maintenance, operation, repair and construction, and reconstruction of its line along the respondent's line of railroad, which is admitted in the return, discloses a carriage by respondent as a common carrier and a service to which others, in like situation as the Western Union Telegraph Company, are entitled.

(V) The contract set forth in the return and under which the respondent claims that its relation to the Western Union Telegraph Company is not that of carrier to shipper, but wholly contractual, is illegal and void, because

(a) It contravenes the act of Congress of July 24th, 1866, entitled "An Act to Aid in the Construction of Telagraph Lines, and to Secure to the Government the Use of the Same for Postal, Military and other Purposes."

(b) It contravenes the Act of Congress of July 2nd, 1890, entitled "An Act to Protect Trade and Commerce Against Unlawful Restraints and Monopolies."

(c) It is a contract in restraint of trade..

*F. T. Myers* and *Daniel W. Rountree,* for Relator.

..*John E. Hartridge,* for Respondent.

WHITFIELD, J. (*after stating the facts*): The return of

the respondent, briefly stated, is that it is transporting and delivering between stations on its line, men, wire, poles, etc., for the Western Union Telegraph Company, as alleged in the alternative writ, and is refusing to perform a like service for all other telegraph and telephone com- panies, but avers that it is not guilty of discrimination thereby, nor subject to any order of the Commission in re- gard thereto, by reason of the fact that the respondent has never held itself out, and does not hold itself out, as a common carrier in respect to the particular service per- formed for the Western Union Telegraph Company and refused for others; that such service forms no part of the duty of a common carrier and is solely a subject of con- tract; that in pursuance of its legal rights the respondent on October 14, 1902, entered into an agreement still exist- ing with the Western Union Telegraph Company to per- form the mentioned service for certain mutual considera- tions and mutual benefits to the contracting parties set out in an attached contract, by virtue of which contract the relation of respondent to the Western Union Telegraph Company is not the relation of carrier to shipper, but wholly contractual, and of such nature that the Postal Telegraph-Cable Company could not give the same consid- eration or the same equivalent to respondent that it is re- ceiving from the Western Union Telegraph Company for the mutual services stated in and performed under the said contract; that the enforcement of the order of the Rail- road Commissioners would result in violating the con- tractual rights of respondent and in depriving respondent of its property without due process of law, and of the equal protection of the laws, contrary to the guarantees of the Constitution of the United States and the amendments thereof; that respondent has always been willing and is

42—S. C.

now ready and offers to transport and carry like employes and material for the Postal Telegraph-Cable Company at and for respondent's regular local rates for the employes, articles or commodities shipped from and to any regular stations on respondent's line of railroad in the State of Florida that may be offered in the ordinary and usual way in which passengers and shipments are tendered; that respondent has a right to contract as it has done, and that said contract does not contravene or violate any of the laws of the State of Florida, and that the setting aside and making void said contract is not within the power of the Railroad Commission of the State of Florida, and not within the scope or contemplation of the act of the Legislature creating said Commission.

The demurrer raises the question of the sufficiency of the return as a defense to the writ.

In the opinion on the demurrer to the alternative writ in this case, 51 Fla. 543, 41 South. Rep. 529, we said: "The respondent having voluntarily performed this service for the Western Union Telegraph Company may not deny it to another company applying for similar service under like conditions. The order of the Railroad Commissioners is a general order, and we think fully authorized by the Constitution and Chapter 4700, Acts of 1899. Nor is this duty affected by the fact that the service was performed for the Western Union Telegraph Company under an agreement or contract. The rates prescribed in this general order for the services to be rendered are general in their nature and apply to all telegraph and telephone companies which seek to have the services performed and are not challenged on the ground of unreasonableness."

We understand from the admissions in the return of the respondent that it has been for some years past and is

now, with trains and cars operated by it, voluntarily transporting and delivering along its railroad line, between the stations thereon, the employes and the poles, wires, etc., of the Western Union Telegraph Company, and that it refuses to render similar service for others. Such service is that of a common carrier, and the fact that it is performed under a particular contract does not affect the character of the service even though the consideration of the contract cannot be furnished by another company demanding similar service, since the same service should be performed for all for a reasonable compensation, and there is no question as to the reasonableness of the compensation fixed under the law for this service.

The facts admitted in the return as to the service being rendered by the respondent for the Western Union Telegraph Company and refused to other companies under like circumstances, show that such service is rendered as a common carrier, and the averment in the return that the service is being rendered under a contract and not as a common carrier cannot avail the respondent as a defense to the writ. There is no showing that the service being rendered for the Western Union Telegraph Company is different from that rendered to other shippers of the same subjects of transportation except that delivery is made between stations on the respondent's line of road. The respondent offers to transport the employes, poles, wire, etc., of the Postal Telegraph-Cable Company, from and to regular stations, at its local rates, thereby admitting them to be proper subjects of transportation.

The respondent, a common carrier, admits that it is voluntarily transporting and delivering between stations on its line, employes and freight for one incorporated public telegraph company to maintain lines of wire along the

railroad line, and that it refuses similar services to others, without giving sufficient excuse for such refusal, thereby admitting that it is guilty of unjust discrimination as found by the Railroad Commissioners. Under these circumstances the respondent may be compelled to perform like services, for a reasonable compensation, for another incorporated public telegraph company to enable it to lawfully establish and maintain its lines of wire along the railroad line. The respondent cannot refuse to render the service to the Postal Telegraph-Cable Company on the ground that the service rendered to the Western Union Telegraph Company is under a contract and that the service is not rendered as a common carrier, when it is not shown that such service differs from that rendered other shippers except as to delivery between stations. See State v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225; Chicago and Northwestern Ry. Co. v. People, 56 Ill. 365, S. C. 8 Am. Rep. 690; Messenger v. Penn. Ry. Co., 37 N. J. L. 531, S. C. 18 Am. Rep. 754; Cumberland Telephone & Telegraph Co. v. Morgan's L. & T. R. Co., 51 La. Ann. 29, 24 South. Rep. 803, S. C. 72 Am. St. Rep. 442; Mercantile Trust Co. v. Atlantic & P. R. Co., 63 Fed. Rep. 910; 5 Am. & Eng. Ency. Law (2nd ed.) 177; 6 Cyc. 372.

Under Section 30 of Article 16 of the Constitution "the Legislature is invested with full power to pass laws * * * to prevent unjust discrimination * * * by persons and corporations engaged as common carriers in transporting persons and property or performing other services of a public nature." Chapter 4700, Acts of 1899, provides that the Railroad Commissioners shall make reasonable and just regulations for the observance of rates fixed by them "as to charges at any and all points for the neecessary handling and delivery of all kinds of freight

and transportation of passengers, and for the prevention of any unjust discrimination in connection therewith * * and to direct and control all other matters pertaining to railroads that shall be for the good of the public. Said commissioners shall have full power and authority to require any railroad, railroad company or common carrier to properly operate its railroad or transportation line and to furnish all the necessary facilities for the convenient and prompt handling, transportation and delivery of all freights offered along its line for transportation, and shall provide and prescribe all such rules and regulations as may be necessary to secure such operation and the furnishing of such facilities and the prompt handling, transportation and delivery of all freights offered."

It is clear that where a railroad company in its capacity as a common carrier renders services to one corporation so as to enable it to serve the public, and, without sufficient excuse, refuses similar services to another corporation lawfully authorized to likewise serve the public, it is an unjust discrimination; and the Railroad Commissioners have the power under the Constitution and Laws of this State to make just and reasonable rules and regulations to prevent such unjust discrimination. See State v. Jacksonville Terminal Co., 41 Fla. 377, 27 South. Rep. 225; State ex rel. Cumberland Telephone and Telegraph Co. v. Texas & P. Ry. Co., 52 La. Ann. 1850, 28 South. Rep. 284; State ex rel. Attorney General v. Atlantic Coast Line R. Co., 51 Fla. 543, 41 South. Rep. 529. See, also, Augusta Brokerage Co. v. Central of Georgia R. Co., 121 Ga. 48, 48 S. E. Rep. 714; Tift v. Southern Ry. Co., 123 Fed. Rep. 789; Agee & Co. v. Louisville & N. R. Co., 142 Ala. 344, 37 South. Rep. 680.

The power of the Railroad Commissioners to make the

order here sought to be enforced is fully established. The statute provides that "all the rules and regulations made and prescribed by said Commissioners   *   *   *   to prevent unjust discriminations or other abuses   *   *   shall be deemed and held to be *prima facie* reasonable and just." The respondent did not appear to be heard in response to the notice served on it of the hearing before the Railroad Commissioners when the order here sought to be enforced was made, and it does not claim that the order is an unreasonable and unjust regulation; nor is the rate of compensation claimed to be unjust and unreasonable; so it cannot be said that the enforcement of the order will be a taking of the property of the respondent without due process of law, or will reprive it of the equal protection of the laws. See State v. Jacksonville Terminal Co., 41 Fla. 337, 27 South. Rep. 225.

The rights of the respondent under the contract which was made in 1902, are subject to the constitutional and statutory provisions above quoted, and the enforcement of the order of the Railroad Commissioners will not violate valid contractual rights of the respondent. City of Tampa v. Tampa Water Works Company, 45 Fla. 600, 34 South. Rep. 631, affirmed in 199 U. S. 241.

The respondent rests its defense upon its claim that in rendering the stated service to the Western Union Telegraph Company it is not acting as a common carrier, and therefore it is not required by law to render a similar service to other telegraph companies; but, as we have seen, the facts as to the character of the service admitted in the return constitute the service that of a common carrier, and this service being voluntarily performed for one gives others under like conditions a right to demand it for themselves.

The demurrer to the return is sustained, the return is held to be insufficient, and the peremptory writ is awarded.

SHACKLEFORD, C. J., and TAYLOR, COCKRELL, HOCKER and PARKHILL, JJ., concur.