(44 South. 905.)

No. 16,571.

STATE ex rel. BOAGNI v. COLORADO SOUTHERN, N. O. & P. R. CO.

(June 21, 1907. On Rehearing, Dec. 2, 1907.)

1. RAILROADS—CATTLE GUARDS AND CROSSINGS—DUTY TO INSTALL.

Where the right of way has been secured by expropriation, the duty of the railroad to install cattle guards and crossings results, not from contract, but from law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 315.]

2. MANDAMUS — SUBJECTS AND PURPOSES OF RELIEF—CLEAR AND UNEQUIVOCAL DUTY—INSTALLATION OF CATTLE GUARDS.

Mandamus is not the proper remedy for enforcing the duty to install cattle guards and crossings, when there is serious difference between the parties as to whether the cattle guards and crossings in question are necessary. Mandamus issues only in cases where the duty sought to be enforced is clear and unequivocal.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, § 266.]

On Rehearing.

3. SAME.

Where, in a mandamus suit against a railroad company by the proprietor of land traversed by the railroad to compel the installation of cattle guards, it is admitted that some of the cattle guards in question are necessary, but it is seriously contended that the others are not necessary, the mandamus will be made peremptory as to those of the cattle guards admitted to be necessary, and the suit will be dismissed as to the others, with reserve of right to bring an ordinary suit.

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Edward Taylor Lewis, Judge.

Mandamus by the state, on relation of E. M. Boagni, against the Colorado Southern, New Orleans & Pacific Railroad Company to enforce compliance with a decree that defendant install and maintain necessary crossings, culverts, and cattle guards, and to compel defendant to remove loose earth piled on relator's land, and to restore the embankment where the cut was wider than the right of way. Judgment for relator, and defendant appeals. Mandamus made peremptory as to those of the cattle guards admitted to be necessary, and suit dismissed as to the others not admitted to be necessary, with the right to bring an ordinary suit.

Dudley Guilbeau (Miller, Dufour & Dufour, of counsel), for appellant. Lewis & Lewis and Kenneth Baillio, for appellee.

PROVOSTY, J. The defendant railroad obtained a judgment expropriating a right of way across plaintiff's plantation. This judgment decreed that the railroad should "install and maintain all necessary crossings, culverts, and cattle guards." The present suit is to enforce compliance with that decree, and also for compelling the defendant railroad to remove loose earth, which it has piled in places on plaintiff's land outside of the right of way, and in other places to restore the embankment where the cut is wider than the right of way. The plaintiff annexed to his petition a plat, showing exactly where he desired that the crossings and cattle guards should be. The suit is by mandamus.

In his return defendant excepted to the proceeding by mandamus, and joined serious issue with plaintiff on the facts, contending, on the exception, that mandamus does not lie in the case, for the reasons that whatever obligations defendant may be under in the premises are contractual, and such, therefore, as are not enforceable by mandamus, and, even if not contractual, are not so clear and unequivocal as to be enforceable by mandamus, and contending, on the merits, that it had not delayed unreasonably in complying with said decree, that its road was yet in course of construction, that such of the cattle guards as are necessary would be installed in due course, that there are no plantation roads at the points where plaintiff is asking for crossings, that a crossing has been completed for one of the roads of plaintiff, and another is in course of construction, and the only other road of plain-

tiff is at a point where the cut is too deep to allow a crossing at grade, and not deep enough for a crossing overhead.

The judgment of expropriation was on the 11th of April, 1906, and the defendant took possession of the right of way immediately. The distance across the place is a mile and a half. The road cuts plaintiff's plantation in two. The surface is uneven, so that defendant's road is either an embankment or a cut. Such being the case, crossings became necessary as the road progressed, and naturally plaintiff began asking for them, and naturally, also, as the situation became more accentuated, he became more pressing. Defendant kept on delaying, and plaintiff began making demands through his lawyers. The defendant answered by vague promises. On the 23d of October plaintiff went over the ground with his lawyers and with defendant's local representative, and plaintiff threatened that unless his demands were complied with within 10 days he would bring suit. As makeshifts, to keep out cattle, defendant, on taking possession, constructed movable wire fences across the road and the right of way, but these fences were too flimsy to turn cattle and were constantly down. In visiting the locality on the day before the filing of the suit, for the purpose of making sure that he might truthfully take the oath required for the mandamus, plaintiff noticed that gates were being installed; but these gates, he says, are liable to be constantly left open. At the filing of suit, one crossing had been completed, and one other was in course of construction, and even that much had not been accomplished without plaintiff's manager giving a helping hand. The crops were growing, and plaintiff's tenants were clamoring both for protection against cattle and for the conveniences for crossing to which they were entitled.

After defendant's road has entered plaintiff's plantation, going due east, it crosses, near the boundary line, a bayou, and then a high bank, and, at 566 feet from the boundary line, a public road. This public road enters plaintiff's plantation about 600 feet south of where the railroad enters it. Its course is northeast, and therefore it and the railroad cut off a small triangle from the main body of the plantation. The area of this triangle is less than an acre. Plaintiff wants cattle guards at the western boundary fence and on both sides of the public road, and wants a crossing for cultivating the triangular piece of ground. Defendant thinks that one cattle guard on the east side of the public road will suffice, and that for cultivating the little triangular piece of land the plaintiff might go around by way of the public road. To the objection that that mode of proceeding would necessitate two gates, one opening into the public road and one into the little field, and that both would be liable to be left open, defendant virtually answers that this would be no very great inconvenience to plaintiff.

Continuing east, along defendant's road, after crossing the public road just mentioned, the distance to the place where defendant admits there should be a crossing, and where, in fact, the one completed crossing is found, is 2,504 feet, or say 12 acres. Between these points the main plantation road intersects the railroad; but the cut along there is between 13 and 14 feet deep, and defendant contends that a crossing at that point or for some distance on either side would be dangerous. The learned judge a quo, who, at the joint request of the parties, went over the ground, thought that the crossing was absolutely necessary, and ordered an overhead crossing to be constructed. For the approaches of this overhead crossing a greater space than the 100 feet of the right of way is necessary. The plaintiff, while on the witness stand, gave his formal consent to the railroad taking this additional space free of cost.

At the other points where crossings are asked the crossings would be at grade, and the sole question is whether they are necessary. The total number asked for is seven. All the cattle guards asked for are at points where the railroad passes through fences, except the one which is at a point where plaintiff says he intends to build a fence at some uncertain time in the future.

We do not agree with defendant that its obligations in the premises are contractual. The forced expropriation of property is not a contract; for being a contract, it lacks the essential element of consent. In unscientific language it may, for convenience, be called a forced sale; but scientifically a contract without consent is simply an impossibility. Our Code speaks of such expropriation as an "expropriation," a "compulsory transfer of property," a "divesting by authority of law," or an "adjudging of the land to such corporation." It nowhere speaks of it as a sale or contract.

When such an expropriation takes place, the obligation of the railroad not to intercept communication between the severed parts of the traversed plantation, and not to open the place to the depredations of cattle, arises, not from contract, since none exists, but from the right to take, as a correlative or inseparable incident to such right. The eminent domain proceeds upon public necessity, and does not operate beyond the public necessity that calls it into operation. The public must pass, and therefore the public passes; but in doing so it can, under the Constitution, disturb or inconvenience the proprietor only in so far as absolutely necessary. The same "authority of law," therefore, which gives leave to pass, imposes the obligation to construct the necessary cattle guards and crossings in such way as to leave the situation as nearly as possible as found—in such way as to take only what is strictly necessary. In an expropriation case the judgment virtual-

ly says: Take thy pound of flesh; take thy right of way; but spill not one drop of Christain blood. Do not interfere with the freedom of communication on this place, or with its protection against cattle.

In Heath v. T. & P. R. R. Co., 37 La. Ann. 730, this court said:

"There is no doubt upon the law of the case. A railroad company must so build its roadbed as not to needlessly injure the land over which it passes. It cannot obstruct drainage with impunity. It must make crossings and cattle guards, on pain of responsibility for damages caused by the omission to make them. In the Eastman Case there was an express stipulation in the grant of the right that cattle guards should be made. There is none in the plaintiffs' donation, which was voluntary and without consideration; but they are entitled to these safeguards that are usual and necessary, as much as if expressly stipulated. They are part of the fixtures that custom and necessity requires for the operation of railroads through open cultivated fields." Kirk v. Railroad Co., 51 La. Ann. 664, 25 South. 463.

In support of what is here said, the court cites articles 1964, 1965, Civ. Code, which read as follows:

"Art. 1964. Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.

"Art. 1965. The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us; and on the moral maxim of the law that no one ought to enrich himself at the expense of another. When the law of the land, and that which the parties have made for themselves by their contract, are silent, courts must apply these principles to determine what ought to be incidents to a contract, which are required by equity."

Such is the situation when the right of way has been secured by contract, and the mutual rights and obligations of the parties flow from contract. "Law, usage, and equity" supply the necessary incidents. And so, in like manner, when the right of way has been secured "by authority of law," the law supplies the necessary incidents; the only difference being that in the one case the necessary incidents flow from contract, whereas in the other they flow from law.

In the case of Habersham v. Savannah, etc., Canal Co., 26 Ga. 665, the Supreme Court of Georgia held that the duty rests as a matter of law upon a canal company to construct a bridge for carrying a private road across its canal, even though no statute so provides, and that mandamus is the proper remedy.

That the duty to construct cattle guards and crossings may in a proper case be enforced by mandamus, even though that duty results only from common law, see 26 Cyc. 366; High on Extra. Leg. Rem. (3d Ed.) 315, 320. See, also, State ex rel. Grady v. C., M. & N. Ry., 79 Wis. 259, 48 N. W. 243, 12 L. R. A. 180, where the authorities are collated; also Telephone Co. v. Railroad Co., 52 La. Ann. 1850, 28 South. 284.

The second of defendant's objections is better founded. The only legal duties which are enforceable by mandamus are those which are "clear and unequivocal." State ex rel. N. O. v. Judge, 37 La. Ann. 589. In this case the number and location of these cattle guards and crossings and their necessity are matters at large, which are seriously contested, and which therefore, should be determined in an ordinary suit.

The learned counsel for plaintiff lay stress upon the fact that there is already a judgment ordering defendant to install all necessary cattle guards and crossings on plaintiff's plantation. But that judgment has left the obligations of defendant as uncertain as they were before. It has determined nothing. It amounts to no more than the expression of a legal situation as to which there has never been any difference of opinion between the parties. Defendant has never denied its obligation to install all necessary cattle guards and crossings on plaintiff's plantation. The sole issue has been, and now is, as to what cattle guards and crossings are necessary. Upon that point, the only one upon which the parties differ, the judgment in question is silent.

And that issue of fact defendant was entitled to submit to a jury, and for the preparation of its defense upon it was entitled, not merely to such time as the judge in his discretion (articles 840, 841, Civ. Code Prac.) might see fit to allow—a week, a day, an hour, or what not—but to the ordinary time which the law allows a litigant for the defense of his property and the trial of his rights.

And what is here said answers the suggestion that the situation was so pressing that an ordinary suit would not have afforded adequate remedy. The pressing need of the plaintiff is not good ground for denying to a defendant a trial by jury in a case involving an appreciation of facts, and therefore properly triable by a jury.

The exception to the proceeding by mandamus is therefore sustained.

The court does not pass upon the question of whether mandamus would not be the proper remedy in a case where upon the facts the duty of the railroad to install the particular cattle guards or crossings called for, was clear and unequivocal, and such as would not be open to serious dispute.

Judgment set aside, and suit dismissed, at cost of plaintiff, without prejudice.

## On Rehearing.

On rehearing, the attention of the court is attracted to the fact that four of the cattle guards asked for by relator are admitted by defendant in its answer to be necessary. Such being the fact, the mandamus as to these four cattle guards must, as the logical consequence of the views expressed by the court, be made peremptory.

The learned counsel for defendant says that the said admission cannot be considered in disposing of the case, because, legally speaking, it has not been made; it figuring in the record only as a part of the answer to the merits, and the answer to the merits having been filed only in the alternative of a

certain preliminary defense, pleaded by way of exception, proving unavailing, and said preliminary defense having been sustained by the court.

The preliminary defense here referred to is the one which, on the contrary, was not sustained by the court, viz., that "mandamus does not lie to enforce the alleged rights of relator." The decision of the court was that mandamus did lie to enforce the rights of relator as these rights were alleged in the petition, but that the defendant seriously contested the truth of the allegations of the petition, and thereby raised an issue of fact properly triable by jury, and that for the latter reason the suit of plaintiff would have to be dismissed. That reason is now shown to be inapplicable to four of the cattle guards. "Ratione cessante, cessat ipsa lex." Hence as to these four cattle guards the decision of the court must be different. No good reason could be assigned why the clear duty which defendant admits as to these four cattle guards should not be enforced by mandamus.

It is therefore ordered, adjudged, and decreed that the defendant, the Colorado Southern, New Orleans & Pacific Railroad Company, be ordered to construct and install without delay a suitable cattle guard on the right of way which it expropriated in suit No. 17,718 of the docket of the Sixteenth judicial district court, parish of St. Landry, entitled "Colorado Southern, New Orleans & Pacific Railroad Company v. Edward M. Boagni," across the land of the relator herein, Edward M. Boagni, at each of the following points: First, at a point 906 feet from the western boundary line of said land, being the point where the fence along the southern side of the public road leading from Opelousas to the Belmont plantation intersects the railroad of defendant herein, the same being cattle guard designated as "No. 3" on the exhibit annexed to the relator's petition; second, at a point 2,605 feet from the western boundary of said land, being the point where the fence dividing the pasture from the field which is on the western side of the plantation intersects the railroad of the defendant herein, the same being the cattle guard designated as "No. 4" on the exhibit annexed to the relator's petition; third, at a point 6,872 feet from the western boundary of said land, being the point where the fence dividing the pasture from the field on the eastern side of the plantation intersects, the railroad of the defendant herein, the same being the cattle guard designated as "No. 6" on the exhibit annexed to relator's petition; fourth, at a point 8,242 feet from the western boundary of said land, being the point where the fence dividing the woodland from the eastern field intersects the railroad of the defendant herein, the same being the cattle guard designated as "No. 7" on the exhibit annexed to the relator's petition—that as to the cattle guards herein specified the mandamus herein prayed be made peremptory, that in other respects this suit be dismissed, but without prejudice, that the defendant pay the costs of the lower court, and the relator the costs of appeal, and that, as thus amended, the decree heretofore handed down herein be reinstated and affirmed.