THE STATE OF FLORIDA AT THE RELATION OF R. HUDSON BURR, NEWTON A. BLITCH AND ROYAL C. DUNN, AS THE RAILROAD COMMISSIONERS OF THE SAID STATE, *Relator*, v. ATLANTIC COAST LINE RAILROAD COMPANY, *Respondent*.

1. Rule 15A of the Railroad Commissioners of this State merely fixes a rate for switching cars of rough lumber consigned to and arriving at the City of Jacksonville from points in this State to any planing mill in the Jacksonville yards and thence, after lumber is dressed to any point in said yards. This rule does not seek to compel a service.

2. The service contemplated by Rule 15A of the Railroad Commissioners of this State, the stopping of a commodity in transit for the purpose of treatment, is in the nature of a special privilege which the carrier may concede, but which the shipper cannot, in the present state of the law, demand as a matter of lawful right.

3. The carrier is entitled to compensation, a reasonable profit beyond the mere costs for the extra service rendered and the privilege extended of stopping cars loaded with lumber at planing mills for treatment and then transporting and delivering them to the place of destination.

4. Carriers may not discriminate between markets nor between individuals in the granting of the privilege of milling in transit, and the Railroad Commissioners likewise, in regulating such privileges may not unjustly discriminate.

5. It is not essential to the validity of Rule 15A of the Railroad Commissioners that it should prescribe or fix one rate for the service of milling in transit to be rendered in all markets and localities of the State. The circumstances of each road and each market or locality must determine the rates of toll to be properly allowed for this service.

6. Whether the service of milling in transit as contemplated by Rule 15A may or may not be enforced as a duty, yet when voluntarily entered upon, it may be regulated and the charges therefor prescribed by the Railroad Commissioners.

7. It is settled law that the duties of a common carrier may arise out of usage as well as from statutory enactments, and when once established the obligation of such carriers to perform them is as binding in the one case as in the other.

8. Property becomes clothed with a public interest when used in a manner to make it of public consequence and effect the community at large, and when one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has created.

9. Matters stated in a motion to quash or in respondent's brief can not be considered if not found in the alternative writ.

This case was decided by the court En Banc.

This is a case of original jurisdiction.

### STATEMENT.

An alternative writ of mandamus was issued here as follows:

"In the Supreme Court of the State of Florida.
The State of Florida
        To
Atlantic Coast Line Railroad Company:
        GREETING:

Whereas by a petition filed by our Railroad Commissioners in our Supreme Court in the name of the State of Florida, through Louis C. Massey, as Special Counsel for our said Railroad Commissioners designated by them, it has been made to appear:

1. That the Atlantic Coast Line Railroad Company is a railroad corporation existing under the laws of the

State of Virginia, which on the first day of July, 1902, became the owner of divers lines of railway in the State of Florida by purchase from the Savannah, Florida & Western Railway Company, which lines, with others since acquired in this State, particularly the Jacksonville Southwestern Railway extending from Jacksonville to Newberry, it operates as a common carrier of persons and property, including rough and dressed lumber, from points in this State to other points therein.

2.   That the City of Jacksonville is an important station on some of the said lines of the Atlantic Coast Line Railroad Company, where it maintains and operates by virtue of ownership or of right by lease, contract or otherwise, extensive terminals, railroad yards and switching facilities for the reception, handling, transportation and delivery of property transported by it to and from the City of Jacksonville from and to other points in this State, and that such terminals, railroad yards and switching facilities, or some portion thereof, were maintained and operated by the Savannah, Florida & Western Railway Company, the predecessor in the title of the Atlantic Coast Line Railroad Company, since about the year 1884 to the time of the sale thereof as aforesaid, on July 1, 1902. That other railroad companies whose lines enter the City of Jacksonville also maintain and operate like terminals, railroad yards and switching facilities for like purposes, as they or their predecessors have done for many years, and the said terminals and railroad yards, including those of the Atlantic Coast Line Railroad Company, are all connected together by transfer tracks and switches, so that the terminal tracks and railroad yards of the City of Jacksonville cover a vast extent of territory in and around said city.

3.   That as hereinbefore set forth, the said railroad yards in the City of Jacksonville or a portion thereof have

been maintained and operated for many years past by the railroads entering that city, and as far back at least as the year 1891 planing mills have been established within the said yard limits and accessible to the tracks therein, to which it was and is usual and customary for the railroad companies to switch upon order of the consignees, cars of rough lumber shipped to and arriving at the City of Jacksonville from other points in this State, for the purpose of dressing the same, and after dressing to switch the said cars of lumber to some other point in the yards designated by the said consignees.

4.   That in the year 1891, and from thence continuously until the year 1907 the said railroad companies entering the city of Jacksonville aforesaid, including the Savannah, Florida & Western Railway Company and its successor the Atlantic Coast Line Railroad Company, made a charge of two dollars per car for switching cars of rough lumber shipped to the said city, to a mill within the yards as aforesaid, and thence, after the dressing of the lumber, to some other point in the said yards for delivery, and this charge was the same, whether the switching movement of the car was over the tracks of one or more railroads; but about the autumn of the year 1907, the said railroad companies maintaining and operating the railroad yards at the said city increased the charge for the said service to five dollars per car if the switching was over the tracks of one railroad company only, and to seven dollars per car if it was over the tracks of two railroad companies.

5.   That upon the complaints of citizens of Jacksonville and of other parts of this State that the charges exacted as aforesaid by the railroad companies were exhorbitant and unreasonable, your petitioners gave due notice of their intended action and of the time and place of hearing, to all the railroad companies and to the persons interested, and pursuant to said notice held a session in the City of

Jacksonville on December 8, 1908, at which a very full and exhaustive hearing of all the parties interested were had, and thereupon on December 19, 1908, your petitioners prescribed a rate for the said services in a new Rule to take effect January 1, 1909, and to be known as Rule 15-A of the 'Rules Governing the Transportation of Freight,' which is as follows:

'15-A. The charge for switching cars of rough lumber consigned to and arriving at the City of Jacksonville from points in this State to any planing mill in the Jacksonville yards, and thence, after lumber is dressed, to any point in the same yards, shall not be more than $2.00 per car; Provided, that when the said switching movement is over the tracks of more than one railroad, a charge of not more than $3.00 may be made. This rule shall not be interpreted as rescinding or modifying Rule 15 except as herein specifically provided.'

6.   That Rule 15 of the 'Rules Governing the Transportation of Freight' referred to in said Rule 15-A, is, and was at the time of making the order last aforesaid as follows:

'15.   A charge of not more than $2.00 per car, without regard to its weight or contents, will be allowed for transporting, switching or transferring a loaded car from any point on any railroad to any connecting railroad, or to any warehouse, side-track or other point of delivery that may be designated by the consignee, within a distance of three miles from the point of starting, and no railroad company shall decline or refuse to transport, switch or transfer any car as above, or, to receive it from any connecting railroad for such purposes. When in the transfer, switching or transportation of a car between such points, it is necessary to pass over the track or tracks of any intermediate railroad or railroads, said maximum charge of two dollars shall be equitably divided between the railroads at inter-

est. When a charge is made for the transfer, switching or transportation of a loaded car between such points, no additional charge shall be made for the accompanying movement of the empty car in the opposite direction. Provided, That this rule shall not interfere with any prevailing legal rate for the transportation of freight between different stations; and shall not apply to any freight that does not pay a direct freight transportation charge in connection with a switching charge.'

7. That the Atlantic Coast Line Railroad Company has entirely ignored and refused to charge and put into effect the rate prescribed in and by said Rule 15-A, but has charged and received since January 1, 1909, and is still charging and receiving the sum of five dollars for switching cars of rough lumber consigned to and arriving at the City of Jacksonville from points in this State, to a planing mill in the Jacksonville yards and thence, after the lumber is dressed, to a point in the same yards when the said switching movement is over its own tracks only, for which service under the said Rule 15-A it is entitled to charge and receive the sum of two dollars.

8. That your petitioners, as the Railroad Commissioners of this State, and the people of this State are entirely without adequate remedy in the premises unless it be afforded them by the interposition of this Honorable Court through a writ of mandamus.

NOW THEREFORE, We being willing that full and speedy justice be done in the premises, do command you, the Atlantic Coast Line Railroad Company forthwith to observe the rate prescribed in Rule 15-A of the 'Rules Governing the Transportation of Freight' by our Railroad Commissioners for switching cars of lumber over your own tracks only in the Jacksonville yards; that is to say, to charge and receive no more than the sum of two dollars per car for switching cars of rough lumber consigned to

and arriving at the City of Jacksonville from points in this State, to any planing mill in the Jacksonville yards and thence, after lumber dressed to any point in the same yards, when the said switching movement is over your own tracks only; or that you appear before the Justices of our Supreme Court sitting within and for the State of Florida at the Court Room in the City of Tallahassee on the twenty-second day of June, A. D., 1909, at 10 o'clock A. M. of that day, and show cause why you refuse so to do, and have you then and there this writ.

Witness the Honorable James B. Whitfield, Chief Justice of the Supreme Court of the State of Florida, and the seal of the said Supreme Court, at Tallahassee, the Capital, this Eighth day of June, A. D., 1909.

(Seal)                    M. H. Mabry,
          Clerk Supreme Court, State of Florida."

The respondent filed a motion to quash the alternative writ of mandamus upon the following grounds:

"First: No power is conferred by law upon the Florida Railroad Commissioners to make and enforce the rule set forth in said alternative writ as 'Rule 15-A,' of the Rules Governing the Transportation of Freight.

Second: That the effect of the enforcement of Rule 15-A set out in the alternative writ would be to deprive the defendant of its property without due process of law, and therefore, in contravention of the Fourteenth Amendment of the Constitution of the United States.

Third: The alternative writ shows the movement covered by said Rule 15-A is not a switching movement, and does not make provision for compensation for a switching movement or service, but shows that the movement covered by it is a transportation movement or service, and makes provision for a transportation service.

Fourth: By order No. 248 set out in the alternative writ, whereby Rules No. 15 and No. 15-A are a part of one

regulation, the said two rules taken together are so inconsistent and uncertain as to be incapable of enforcement.

Fifth:   The alternative writ shows that the movement covered by said Rule 15-A is not à switching movement, and does not make provision for compensation for a switching movement, or service, but shows that the movement covered by it is a transportation movement, or service, and makes provision for a transportation service, which provision is discriminatory against, and unreasonable, arbitrary and illegal as to the respondent, and other like railroad companies and common carriers, at Jacksonville, Florida, as against and in the case of like railroad companies and common carriers at other points in the State of Florida.

Sixth:   Rule 15-A produces an unjust and illegal discrimination in that it provides a particular and lesser rate for a particular class of manufacturers, shippers and consignees, to-wit, manufacturers of dressed lumber, at a particular point in Florida, to-wit, Jacksonville, Florida, as against other manufacturers, shippers and consignees of other products at the same point, Jacksonville, and as against manufacturers, shippers and consignees of the same and other products at other points in the State of Florida.

Seventh:   Rule 15-A shows upon the part of the Railroad Commissioners an arbitrary intent to discriminate, not only against manufacturers, shippers and consignees, other than manufacturers, shippers and consignees of dressed lumber, at Jacksonville, Florida, but also the same intent as against all shippers, manufacturers and consignees at other points than at Jacksonville, Florida, and a disposition to arbitrarily control the transportation, at Jacksonville, of dressed lumber, to the benefit of manufacturers, shippers and consignees of dressed lumber at Jack-

sonville, regardless of law and the rules condemning irregularity and discrimination.

7-a. That this rule sought to be enforced is unreasonable and unjust.

Eighth: And for other grounds apparent upon the face of said writ. Wherefore, respondent prays that said writ be quashed.

*W. E. Kay,* General Counsel, *Doggett & Smith,* Division Counsel and *Geo. P. Raney* and *E. J. L'Engle* of Counsel for motion.

*L. C. Massey,* contra.

————

PARKHILL, J. (*after stating the facts.*)—As interesting and important as it is, the question whether the effect of the enforcement of Rule 15-A would be to deprive the respondent of its property without due process of law, and therefore in contravention of the Fourteenth Amendment of the Constitution of the United States, because it requires, as argued, that railroads shall part with their cars or make connections with other railroads without due process of law does not confront us. This rule does not seek to compel a service, but merely to fix a rate therefor: "The charge for switching cars of rough lumber \* \* \* to any planing mill in the Jacksonville yards and thence, if the lumber is dressed, to any point in the same yards, shall not be more than two dollars per car \* \* \*" . It is true that the Rule further provides "that when the said switching movement is over the tracks of more than one railroad a charge of not more than three dollars may be made," but such rule nowhere requires or compels the service over more than one railroad, and the

alternative writ herein complains that the respondent only "has   *   *   *   refused to charge and put into effect the rate prescribed in and by said Rule 15-A, but has charged and received   *   *   *   and is still charging and receiving the sum of five dollars for switching cars of rough lumber consigned to and arriving at the City of Jacksonville from points in this State, to a planing mill in the Jacksonville yards and thence, after the lumber is dressed, to a point in the same yards when the said switching movement *is over its own tracks only,* for which service under the said Rule 15-A it is entitled to charge and receive the sum of two dollars." And the command of the writ is that the respondent forthwith "observe the rate prescribed in Rule 15-A of the 'Rules Governing the Transportation of Freight' by our Railroad Commissioners for switching cars of lumber over *your own tracks only* in the Jacksonville yards; that is to say, to charge and receive no more than the sum of two dollars per car for switching cars of rough lumber consigned to and arriving at the City of Jacksonville from points in this State, to any planing mill in the Jacksonville yards and thence, after lumber is dressed to any points in the same yards, *when the switching movement is over your own tracks only.*"

It is also true that Rule 15, in prescribing a rate for transporting, switching or transferring a loaded car from any point on any railroad to any connecting railroad, or to any warehouse, sidetrack, or any other point of delivery that may be designated by the consignee within a distance of three miles from the point of starting, provides that no railroad company shall decline or refuse to so transport, switch or transfer any car, or to receive it from any connecting railroad for such purpose; but the service here contemplated is entirely distinct from that of switching cars of rough lumber to a planing mill and thence if the

lumber is dressed to any point in the same yards, as provided by Rule 15-A.

The service contemplated by Rule 15-A, the stopping of a commodity in transit for the purpose of treatment, is said to be in the nature of a special privilege which the carrier may concede, but which the shipper cannot, in the present state of the law, demand as a matter of lawful right. Diamond Mills v. Boston & M. R. R. Co., 9 I. C. C. Rep. 311. Whether the carrier is or is not under obligations to permit the interruption of the transit, the rule merely seeks to regulate the charge for such service when rendered. Whether intentionally or not, Rule 15-A seems not to have determined that question as far as the Commission may determine it, for it fails to contain the provision that no railroad company shall decline or refuse to transport, switch or transfer any such car, or the further provision that no railroad shall refuse to receive such car from any connecting railroad for such purposes, while these provisions are made a part of Rule 15, which provides a rate for transporting, switching or transferring a loaded car from any point on a railroad to any connecting railroad or to any warehouse, sidetrack, &c., not stopping the commodity for the purpose of treatment.

As the rule plainly avoids the difficulties that have been suggested in the second ground of the motion to quash we will not undertake to consider them. So understanding the two rules, 15 and 15-A, and taking them together, we do not think them so inconsistent and uncertain as to be incapable of enforcement, as is suggested in the fourth ground of the motion to quash.

We cannot see, from anything in the alternative writ, wherein Rule 15-A is discriminatory against Jacksonville, or against localities other than that city, or against commodities and dealers therein, other than rough lumber, or against the respondent and other railroad companies

VOL. 59, JANUARY TERM, 1910.        623

State *ex rel.* R. R. Com'rs. v. A. C. L. R. R. Co.—Opinion of Court.

and common carriers at Jacksonville and at other points in this State, as is contended for in the fifth, sixth and seventh grounds of the motion to quash. In regard to these matters and contentions we must confine ourselves to the allegations of the alternative writ. Matters stated in the motion to quash or in respondents brief cannot be considered, if not found in the alternative writ. State *ex rel.* Romano v. Yakey, 43 Wash. 15, 85, 85 Pac. Rep. 990.

There is nothing in the alternative writ to show that there are any planing mills within railroad yards in localities or lumber markets other than Jacksonville, or that railroad companies in these other localities either do not, or are compelled, to render the service of transfer to or from the mill if there be one, or that other commodities are shipped to Jacksonville or other localities for stoppage at mills of any kind for treatment, or that the charge made by other railroads for like service at other places is unreasonable or excessive. In fact, there is nothing on the face of the alternative writ to sustain the charge of unjust discrimination made in the motion to quash. We cannot see in the allegations of the alternative writ that Rule 15-A provides a lesser rate for manufacturers of dressed lumber at Jacksonville than it does for other manufacturers and shippers of other products at Jacksonville, and manufacturers, shippers and consignees of the same and other products at other points in this State. Undoubtedly carriers may not discriminate between markets nor between individuals in the granting of such privileges as are contemplated by Rule 15-A (Southern Railway Company v. St. Louis Hay & Grain Company, 214 U. S. 297) and the Commissioners likewise in regulating such privileges may not unjustly discriminate; but such discrimination, if it exists, should be set up by a return to the alternative writ. It cannot

be made so to appear by motion to quash or in the form of a speaking demurrer, where there is nothing in the record as made by the alternative writ to evidence any such discrimination.

The alternative writ does not show that the rate fixed by the Commission in Rule 15-A is unreasonable, unjust or exorbitant or unjustly discriminatory in amount against any other locality or person. If the rate is so illegal and unjust it may be made to appear by return to the alternative writ; but for aught that appears the same rate may prevail for other markets, by virtue of other rules. There may be sub-divisions of Rule 15 for every letter of the alphabet dealing with other places, markets and commodities. It is not essential to . the validity of Rule 15-A that it should prescribe or fix one rate for the service to be rendered in all markets and localities of the State. A uniform rate is not essential to its legality. The circumstances of each road and each market or locality must determine the rates of toll to be properly allowed for this service. The carrier is entitled to receive some compensation beyond mere cost of this service; and the cost thereof may be greater or less in one city than in another. The fact that the rate fixed in Rule 15-A for Jacksonville is different from the uniform rate fixed by Rule 15, does not show an unreasonable discrimination, for the service contemplated by the two rules is entirely different. There is a sphere of operation for both rules, and the rate prescribed for the service by one rule may be different from the rate fixed by the other rule and yet both rates may be reasonable and just. Cincinnati, N. O. & T. P. R. R. Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. Rep. 700; Texas & P. R. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. Rep. 666; Inter-

state Commerce Commission v. Alabama Midland R. Co., 168 U. S. 144, 18 Sup. Ct. Rep. 45.

In State *ex rel.* Attorney General v. Atlantic Coast Line Ry 52 Fla. 646, 41 South. Rep. 705, this court held that the rules and regulations made by the Railroad Commissioners to prevent unjust discriminations or other abuses by railroad companies are by law deemed and held to be *prima facie* reasonable and just, and, in the absence of a showing of unreasonableness, the enforcement of such rules and regulations against a railroad company will not, of itself, be a taking of property without due process of law, or deprive such railroad company of the equal protections of the laws. Whether the rate is in fact an unreasonable and unjust one must be determined upon answer or return and proof. See the note to City of Madison et al. v. Madison G. & E. Co. et al., 129 Wis. 249, 9 Ann. Cas. 819, 823.

We come now to the first contention made by the motion to quash, "No power is conferred by law upon the Florida Railroad Commissioners to make and enforce the rule set forth in said alternative writ as 'Rule 15-A,' of the Rules Governing the Transportation of Freight."

Section 30 of Article 16 of the constitution invests the legislature with "full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in *transporting* persons and property, or *performing other services of a public nature.*" The legislature, by section 2893 of the General Statutes, authorized and required the Railroad Commissioners to make reasonable and just rates of freight tariffs to be observed by all railroads, railroad companies and common carriers *doing business* in this State *over their respective lines or connecting lines,* and to make reasonable and

just regulations for the observance of the same as to charges at any and all points for the necessary handling and delivery of all kinds of freight, and for the prevention of any unjust discrimination in connection therewith; also to regulate charges for storage, wharfage, and demurrage, refrigerator cars, fruit boxes, icing, *etc.* in transit, and to direct and control all other matters pertaining to railroads that shall be for the good of the public.    Matter of Tr. Village of Saratoga Springs v. Saratoga G. E. L. & P. Co., 191 N. Y., 123, 14 Ann. Cas. 606, 614.

Section 2896 of the General Statutes gives the Commissioners full power and authority to require any railroad, railroad company or common carrier to properly operate its road or transportation line, and to furnish all the necessary facilities for the convenient and prompt handling, transportation and delivery of all freight offered along its line for transportation, and requires the Commissioners to provide and prescribe all such rules and regulations as may be necessary to secure such operation and the furnishing of such facilities and the prompt handling and delivery of all freights offered; and, by section 2891, the term "railroad," as used in the provisions already stated, is defined to include *all the road in use by any corporation or other person operating a railroad.*    In section 2921 of the General Statutes the Commissioners are given and granted full authority to do and perform any act or thing necessary to be done to effectually carry out and enforce the provisions and objects of the chapter dealing with this subject.

Whether the Railroad Commissioners have express statutory authority to require the performance of the duties or the granting of the privileges contemplated by Rule 15-A or not, it is made to appear by the allegations of the alternative writ that long before and at the time

of the adoption of Rule 15-A by the Railroad Commissioners, "the said railroad yards in the city of Jacksonville or a portion thereof have been maintained and operated for many years past by the railroads entering that city, and as far back at least as the year 1891 planing mills have been established within the said yard limits and accessible to the tracks therein, to which it was and is usual and customary for the railroads companies to switch, upon order of the consignees, cars of rough lumber shipped to and arriving at the City of Jacksonville from other points in this State, for the purpose of dressing the same, and after dressing to switch the said cars of lumber to some other point in the yards designated by the said consignees."

In performing this service the railroad companies were "doing business over their respective lines or connecting lines" and section 2893 of the General Statutes authorized and required the Commissioners "to make reasonable and just rates of freight tariffs to be observed by such railroads and common carriers, and to make reasonable and just regulations for the observance of the same as to charges at any and all points for the necessary handling and delivery of freight and for the prevention of unjust discrimination in connection therewith."

This was a service, too, or matters pertaining to railroads for the good of the public, or, as the constitution expressed it, "services of a public nature," and the statute authorizes the Commissioners to direct and control all such matters.

It is settled law that the duties of a common carrier may arise out of usage as well as from statutory enactments, and when once established the obligation of such carriers to perform them is as binding in the one case as in the other. State *ex rel.* Attorney General v. Atlantic Coast Line R. R. Co., 51 Fla. 543, 41 South. Rep. 529;

State *ex rel.* Attorney General v. Atlantic Coast Line R. R. Co., 52 Fla. 646, 41 South. Rep. 705; Norfolk & P. Belt Line R. Co. v. Commonwealth, 103 Va. 289, 49 S. E. Rep. 39. In other words, whenever a duty has been imposed either by usage or by statute the courts may be called on to give it effect. Memphis & L. R. R. Co. v. Southern Exp. Co., 117 U. S. 1, 6 Sup. Ct. Rep. 542, 29 L. Ed. 791.

If this may be said to be a drayage service it is not a private drayage service, as suggested by respondent, but a public drayage business. Where does the company get authority to do a private drayage business? As the court said, in Munn v. Ill., 94 U. S. 113, text 125, 24 L. Ed. 77, "property becomes clothed with a public interest when used in a manner to make it of public consequence and effect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has created." See also, Southern Indiana Ry Co. *et al.* v. Railroad Commission of Indiana, .. Ind. · . . ., 87 N. E. Rep. 966; State *ex rel.* Star Pub. Co. v. Associated Press, 159 Mo. 410, 60 S. W. Rep. 91, 51 L. R. A. 151, 81 Am. St. Rep. 368; Jacobson v. Wisconsin, M. & P. R. Co., 71 Minn. 519, 74 N. W. Rep. 893; State v. Wabash, St. Louis & Pac. Ry Co. 83 Mo. 144; Allnutt v. Inglis, 12 East 527.

We think it may be also said that the service in question is cognate to and so intimately connected with the public service involved in the carriage and delivery of freight by the railroad company as to constitute a part of such service and consequently subject to governmental control.

The allegations of the writ show that the respondent maintains and operates extensive terminals, railroad

yards and switching facilities for the reception, handling, transportation and delivery of freight or property transported by it, and these terminal and switching facilities are all connected together by transfer tracks and switches. The respondent has connected these spur tracks or switches with and made them a part of its railway system and devoted them to the purposes of traffic. That is a public use. Such being the case they are not private tracks. While the respondent is entitled to compensation, a reasonable profit, for the extra service rendered and the privilege extended of stopping cars loaded with lumber at the planing mills for treatment and then transporting and delivering them to the place of destination, it is subject to the same obligation and public control as to these switches and spur tracks and the service over them as to its main line. State *ex rel.* Railroad & Warehouse Commission v. Wilmar & S. F. R. Co., 88 Minn. 448, 93 N. W. Rep. 112; Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. Rep. 75; Barre R. Co. v. Montpelier & W. R. R. Co., 61 Vt. 1, 17 Atl. Rep. 923.

By section 2891 of the General Statutes, the term railroad is defined to mean "all the road in use by any corporation &c." As was said by the court in Missouri Pac. Ry Co. v. Whichita Wholesale Grocery Co., 55 Kan. 525, 40 Pac. Rep. 899, "a railroad transporting a car load of freight one mile, using a switch engine for motive power, is just as much a common carrier as if the distance were a thousand miles by regular freight train." See also, Louisville & Nashville R. Co. v. Central Stock Yards Co., 30 Ky. L. 18, 97 S. W. Rep. 778.

These tracks in the railroad yards in Jacksonville, then, are not mere private ways, outside of the principal road. They connect with it, are used as a part of it, conferring the same rights upon the company and im-

posing the same obligations as the main line. The people who have occasion for the transportation of rough lumber over them are interested in them. The public enjoy a beneficial use of them.

We conclude, therefore, that, whether the service contemplated by Rule 15-A may or may not be enforced as a duty, yet when voluntarily entered upon as the writ shows is the case here, it may be regulated, and the charges therefor supervised by the Railroad Commissioners.

The motion to quash the alternative writ is overruled, and the respondent is required to answer within 20 days from the filing of this opinion.

All concur except TAYLOR, J., absent on account of illness.