THE STATE OF FLORIDA *ex rel,* RAILROAD COMMISSIONERS, *Relators,* v. LOUISVILLE & NASHVILLE RAILROAD COMPANY AND SEABOARD AIR LINE RAILWAY, *Respondents.*

1.  The safety and comfort of passengers whether intrastate or interstate, or both, may be provided for by State authority when not in conflict with lawful regulations of Congress; and the safety and comfort of passengers may not be subordinated to freight traffic.

2.  Averments of railroad companies as to the adequacy of the public service being performed by them and the future effect of an order relative to such service made by State authority, may be mere conclusions not admitted by a demurrer or mere opinions that may not be sustained by experiments or experience.

3.  The Railroad Commissioners are State officers charged specially with the governmental function of making just and reasonable regulations for the transportation of intrastate passengers and freight by railroads operating in the State, and their findings and orders should be accorded the force and weight due to such tribunal under our system of government, when the invalidity of the action taken is not made to clearly appear in the authority exercised, or in mistaken application of law, or in regulations adopted or enforced arbitrarily and illegally or without appropriate facts to support them.

4.  The burdens of lawful governmental regulations are assumed by common carriers in undertaking to render the public service, and such burdens are not invasions of property rights.

5.  The franchises and privileges which the State permits railroad companies to use in rendering the public service, carry with them the absolute primary and imperative duty to render an adequate service reasonably suited to the needs of the public to be served, as well as the obligation and duty to observe all lawful governmental regulations of the public service undertaken.

6.  The law raises an implied duty of railroad common carriers to provide adequate facilities for the safe and comfortable transportation of passengers, that is not subordinate to the duty of transporting freight.

7.  A reasonable compensation for service rendered the public is a property right of a common carrier; but this does not necessarily insure a full return for values used in rendering the service.

8.  Whether a reasonable compensation produces a return for property, management and labor used by a common carrier in rendering its public service depends upon circumstances; and the risks and burdens of the contingency are assumed by the carrier in voluntarily undertaking to render the public service.

9.  The prime duty of a common carrier to render a safe and reasonably adequate service is required by law to be effectually performed when possible whether such performance is profitable or not.

10.  Where the public duty of a common carrier of passengers and freight is assumed, by a railroad company using public franchises, the State has ample authority under its reserved police powers to require the carrier to transport passengers in trains separate from freight trains.

11.  Railroad companies may be required by lawful governmental regulations to transport passengers and freight in separate-

trains where it is necessary for the safety of passengers, without reference to the fact that the particular service may not be profitable, where the particular requirement is not of itself so unreasonable as to be an arbitrary burden put upon the carrier.

12. Where an amended return presents no sufficient defense to an alternative writ of mandamus, a peremptory writ may be awarded.

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the court.

*F. M. Hudson*, for Relators.

*W. A. Blount* and *W. J. Oven*, for Respondents.

WHITFIELD, C. J.—Respondents, by leave of court, filed the following amendment to the return as set out in the statement to the former opinion herein:

"The respondents, by leave of the Court first had and obtained, amend their return heretofore filed as follows:

Amend paragraph 8 so that it shall read as follows:

'8. That the Louisville and Nashville Railroad Company has operated and managed its roads lying in the State of Florida, including the line between Pensacola and River Junction, with the utmost economy, consistent with the safety and despatch of its passengers, and with the safe and prompt handling of its freights; that it has purchased supplies and equipments of the class and character required, as cheaply as it could get them; that its employes are paid as low wages as they would be employed at, taking into consideration their efficiency and ability to handle the trains of the said Louisville

& Nashville Railroad Company with despatch and safety; that all expenditures made in connection with and upon the said lines of railroad have been made as cheaply as possible; yet, that by and from the operation of the said road, conducted in the best manner known to the respondent, and, as it believes, in the most economical manner possible, the respondent has not been able, by the operation of its said lines in Florida, to receive from its business on said roads, and thereby to realize, a sum sufficient to pay its operating expenses, and interest exceeding 3 per cent, or any fair and reasonable return, upon the actual value of the property of the said Louisville & Nashville Railroad Company, devoted to and used in the public service, as a common carrier, in Florida, of inter-state and intra-state passengers and freight, or even upon the actual value of that proportion of said property devoted to and used in the public service as a common carrier in Florida of intra-state commerce, passengers or freight; that money cannot be borrowed in the State of Florida, for ordinary purposes for use in industrial enterprises, at less than from 7% to 8% and for use in large enterprises, like the construction and improvement of railroads, for less than 5¼ to 6%; and that the profits ordinarily made by industrial enterprises in Florida, usually exceed 8%; that the legal rate of interest in the State of Florida allowed upon judgments and decrees, and upon contracts where no rate is stipulated therein, is 8%; and that if the said schedule directed by Order No. 346 be put into operation, and the said freight cars eliminated from trains Nos. 1 and 4 of the said Louisville & Nashville Railroad Company, the cost of operating under such schedule, and the loss of the fast freight business, or the cost of operating a special fast freight train, would reduce the net receipts of the said respondent from

the operations of its said lines, and would render it still more unable to realize from said operation sufficient to pay the cost of operation of said lines, and any interest, exceeding 3%, or any fair and reasonable return as hereinbefore in this paragraph set forth.

And the said respondent says that the putting into effect of the said Order 346, producing the said result would be a deprivation by the State of Florida of the respondent of its property, without due process of law, and in violation of the provisions of the Fourteenth Amendment of the Constitution of the United States, and would deny to the said respondent the equal protection of the Law, and thereby violate the provisions of the said Constitutional amendment.'

Amend paragraph 10 so that it shall read as follows:

'10.    That the Seaboard Air Line Railway has operated and managed its roads lying in the State of Florida, including the line between Jacksonville and Pensacola, with the utmost economy, consistent with the safety and despatch of its passengers, and with the safe and prompt handling of its freight; that it has purchased supplies and equipment of the class and character required, as cheaply as it could get them; that the employes are paid as low wages as they would be employed at, taking into consideration their efficiency and ability to handle the trains of the said Railway with despatch and safety; that all expenditures made in connection with and upon the said lines of railroad have been made as cheaply as possible; yet, that by and from the operation of the said road, conducted in the best manner known to this respondent, and, as it believes, in the most economical manner possible, the said respondent has not been able, by the operation of its said lines in Florida, to receive from its business on said roads, and thereby

to realize, a sum sufficient to pay its operating expenses, and any interest, or any fair and reasonable return, upon the actual value of the property of the said Seaboard Air Line Railway, devoted to and used in the public service, as a common carrier in Florida, of interstate and intrastate passengers and freight, or even upon the actual value of that proportion of said property devoted to and used in the public service as a common carrier in Florida of intrastate commerce, passengers or freight; and that if the said schedule directed by said Order No. 346 were put into operation, and the said freight cars eliminated from trains Nos. 78 and 79 of the said Seaboard Air Line Railway, the cost of operating under said schedule, and the loss arising from the loss of the fast freight business, or the cost of operating a special fast freight train, would reduce the net receipts of the said respondent from the operation of its said lines, and would render it still more unable to realize from said operation sufficient to pay the cost of operation of said lines and any interest, or any fair and reasonable return, as hereinbefore in this paragraph set forth.

And this respondent says that the putting into effect of the said Order No. 346, producing the said result, would be a deprivation by the State of Florida, of the said respondent of its property, without due process of law, and in violation of the provisions of the Fourteenth amendment of the Constitution of the United States, and would deny to the said respondent the equal protection of the law, and thereby violate the provisions of the said Constitutional amendment.'

Amend Paragraph 13, so that it shall read as follows:

'13. That the number of passengers shown in paragraph 7, to have traveled on the line of said Louisville

& Nashville Railroad Company, between Pensacola and River Junction, during the week mentioned in said paragraph, was approximately the average number of passengers traveling per week over said line during the year next preceding said week. That the passenger travel over the lines of the respondent between Jacksonville and Pensacola is not large, and that the respondents now operate upon said lines between said points two fast trains, one each way, daily, of which trains No. 3 of the Louisville & Nashville Railroad Company, leaves Pensacola at 6:45 A. M. and becoming train No. 76, of the Seaboard Air Line Railway, at River Junction, reaches Jacksonville, at 7:30 P. M.; and train No. 77 of the Seaboard Air Line Railway leaves Jacksonville at 8:05 A. M.; and becoming train No. 2 of the Louisville & Nashville Railroad Company at River Junction, reaches Pensacola at 9:45 P. M., which affords adequate facilities for fast travel for all passengers traveling over and through either of said points to the other, and for all passengers traveling on said lines requiring, or desiring, fast travel.

That the inconvenience to the way passengers on the lines of the respondents, and the injury to them and to the communities, and to respondents, as hereinbefore set forth, will result from the change of schedule proposed by Order No. 346, unless respondents put into operation local trains on the said lines, with schedules the same, or substantially the same as those now in force as to trains one and four on the Louisville & Nashville Railroad Company's line, and 78 and 79 on the Seaboard Air Line Railway's line; that the addition of said local trains would not add to the number of passengers traveling on said lines, but would transfer to said additional trains by far the largest part of the passenger travel now using trains 1 and 4 and 78 and 79. That the addition of said

trains would double the large expense of the passenger service now rendered by the respondents to the public by the said trains 1 and 4 and 78 and 79, and thus still further lessen the income of the respondents and render them still more unable to earn from the operation of their lines in Florida operating expenses and interest, as hereinbefore set forth.' "

The averments of the amended return do not constitute a defense to the present writ under the principles announced in the former opinion herein. See State ex rel. v. Louisville & Nashville Ry. Co., 62 Fla. 315, 56 South. Rep. —. There is no statement that the enforcement of the order requiring the respondents to discontinue the hauling of freight cars on two designated regular trains that carry passengers, will result in a denial to the respondents of a reasonable compensation for the entire intrastate service rendered severally by the respondents, and will thereby amount to an unlawful taking of respondents property, even if that would be a defense to the writ requiring the performance of this particular public duty. Nor is it averred that the regulation will deny to the respondents a reasonable return for the real value of the property, management and labor actually and properly used by them in their intrastate business taken as a whole.

With slightly varying terms, it is severally averred that "the respondent has not been able, by the operation of its lines in Florida, to receive from its business on said roads, and thereby to realize, a sum sufficient to pay its operating expenses, and any interest, or any fair and reasonable return, upon the actual value of the property ———— devoted to and used in the public service, as a common carrier in Florida of interstate and intrastate passengers and freight, or even upon the actual

value of that proportion of said property devoted to and used in the public service as a common carrier in Florida of intra-state commerce, passengers and freight, ——— and that if the proposed schedule be enforced and the freight cars eliminated from the designated trains, the cost of operating under such schedule and the loss of the fast freight business, or the cost of operating a special fast freight train, would reduce the net receipts of respondent from the operation of its said lines, and would render it still more unable to realize from said operation sufficient to pay the cost of operation of said lines, and any ——————— fair and reasonable return upon the property used in the service." As to the Louisville & Nashville Railroad Company, it is averred that the enforcement of the order will deny to it "interest exceeding 3%, or any fair and reasonable return upon the actual value of the property" used in rendering its intrastate service. These averments, even if sufficiently pleaded without statements of specific facts to support them, do not in terms or in effect justify the assertion that the enforcement of the order will unlawfully deprive the respondents of property rights.

Although it is stated in general terms, without specific facts to support the averment, that the effect of the order will be to deprive the respondents of a fair return for the actual value of the proportion of the property used in the intra-state service, it is not stated that this will result if the operating expenses are also properly apportioned. Besides this, it is not stated what is included in "operating expenses," and they may include the value of the use of property that is used but not consumed in rendering the service, as well as the value of labor and management used, and of property used and consumed, in rendering the service. Some property such as fuel,

stationary, lubricants, etc., are consumed in the use. Lands, rented property and possibly other species of property are not consumed in the use, but the value of the use may be considered as operating expenses. Rolling stock and other property not permanent in its nature is gradually consumed in its use covering a greater or less period of time and the value of its use with reference to its gradual consumption in its use may be included in operating expenses. It does not appear that the value of the use of some of the property for which a "fair and reasonable return" is claimed is not included in "operating expenses."

The averment that the observance of the schedule ordered by the railroad commissioners and the elimination of freight cars from the two trains will produce the result stated, is clearly insufficient as a defense, since this court in the former opinion herein expressly declined to enforce the schedule as made in the order of the railroad commissioners.

It is contended by the respondents that the real purpose of the writ is to obtain a more rapid schedule for the two trains for the convenience of passengers only, and that the discontinuance of freight cars as a part of the trains is a mere incident or means to attain the main object in view, viz: a more rapid schedule for passengers. This contention is not borne out by the pleadings. The first and apparently the main command of the writ is that the respondents discontinue the hauling of freight cars on the two designated trains, the command "and to shorten the schedule time of the operation of the said trains, being distinct and severable and not necessarily connected with the main command though it may be merely an incident thereto, the details of which schedule have been overruled by this court in its former opinion

herein.   The question of schedule has been eliminated from this case.

It is also contended that "the return shows that comparatively few inter-state passengers are carried on these trains, while a large amount of fast freight and packages are carried, which by force of the order will cease to be transported" and that to discontinue the instrumentalities for carrying inter-state freight on the particular trains, with no provision for carrying it otherwise, is not a reasonable regulation of inter-state commerce or a regulation in aid of inter-state commerce," and that consequently the enforcement of the order will be "an unreasonable and illegal assertion of State power over inter-state commerce."

This reasoning is plausible, but not conclusive.   The apparent design of the order is the safety and comfort of passengers most of whom are shown by the return to be carried between points in this State.   The safety and comfort of passengers whether intra-state or inter-state, or both, may be provided for by State authority when not in conflict with lawful regulations of Congress, and the safety and comfort of passengers may not be subordinated to freight traffic.   There is apparently no order of the relators directly interfering with inter-state freight, and the incidental effect imposed by requiring the freight cars to be separated from the particular trains that carry passengers, does not necessarily impose an unlawful burden upon inter-state commerce.   So far as the pleadings show the order is for the safety and comfort of inter-state passengers as well as local passengers, and the incidental effect of the order upon inter-state freight is apparently not unreasonable or arbitrary; and the order apparently does not conflict with regulations authorized by Congress.   The duty of the respondents to transport

inter-state freight is not interfered with by the order to cease carrying freight cars on designated trains, carrying passengers.

The pleadings do not show that the trains affected by the order are "operated principally for inter-state commerce, and incidentally for passengers," as suggested by the respondents. And even if such were the case the regulation here is for the safety and comfort of both inter-state and intra-state passengers in this State, is not arbitrary or unreasonable, and does not conflict with regulations authorized by Congress. The averments of the amended return that the respondents now operate between the designated points two fast trains, one each way, daily "which afford adequate facilities for fast travel for passengers" and that the order here sought to be enforced will cause inconvenience to way passengers and communities and to respondents, unless respondents put in operation local trains which would have to be done at a loss to respondents relate more to the schedule now out of the case and are not a defense to the requirement that the two trains carrying passengers shall not carry freight cars And besides this, such averments are, as to the adequacy of the present service and the future effect of the order, mere conclusions, that are not admitted by the demurrer in the absence of averments of specific facts to sustain the conclusions, or are mere opinions that may or may not be sustained by experiments or experience. See Pensacola & A. R. Co. v. State, 25 Fla. 310, 5 South. Rep. 833, 3 L. R. A. 661; Wilcox. v. Consolidated Gas Co., 212 U. S. 19, 53 Sup. Ct. Rep. (Law Ed.) 382. The statute makes the order of the railroad commissioners *prima facie* reasonable and just; and as the commissioners are State Officers charged specially with the governmental function of making just and reasonable regulations for the trans-

portation of intra-state freight and passengers by railroads operating in this State, their findings and others should be accorded the force and weight due to such a tribunal under our system of government, when the invalidity of the action taken is not made to clearly appear in the authority exercised, or in mistaken application of law, or in regulations adopted or enforced arbitrarily and illegally or without appropriate facts to support them. See Int. Com. Comm. v. Union Pacific, decided by the Supreme Court of the United States on January 9th, 1912. It is not stated that the order was made without a consideration of appropriate facts and circumstances necessary to support it in so far as it relates to the character of the trains. The two trains affected by the order are operated upon the only line of railroad in the State between cities of Jacksonville and Pensacola on opposite sides of the State. In every county between the termini there are one or more towns of considerable population including the Capital of the State.

The only real question here is whether the duty required by this writ as it now stands, imposes such an unreasonable and arbitrary burden upon the respondents as to unlawfully deprive them of property rights without due process of law.

The burdens of lawful governmental regulations are assumed by common carriers in undertaking to render the public service, and such burdens are not invasions of property rights.

The respondents are permitted by the State to use franchises in rendering the public service voluntarily undertaken by them. These privileges carry with them the absolute, primary, imperative duty to render an adequate service reasonably suitable to the needs of the public to be served, as well as the obligation and duty to observe all

lawful governmental regulations of the public service undertaken. An implied duty is raised by law to provide adequate facilities for the safe and comfortable transportation of passengers, that is not subordinate to the carrying of freight.

A reasonable compensation for service rendered is a property right of the respondents; but this does not necessarily insure a full return for values used in the service. Whether such reasonable compensation produces a return for property, management and labor used in rendering the service depends upon circumstances, and the risks and burdens of the contingency are assumed by the carriers in voluntarily undertaking the public service. The prime duty to render a safe and reasonably adequate service is required by the law to be effectually performed whether such performance is profitable or not. Where the public duty of a common carrier of passengers and freight is assumed, by a railroad company using public franchises, the State has ample authority under its reserved police powers to require the carrier to transport passengers in trains separate from freight trains. This authority is essential to the safety and well-being of passengers; and it is the duty of the State to so supervise and regulate the service rendered by the carrier as to secure the safety and comfort of passengers. That it is more safe and comfortable for passengers to be transported on trains without freight cars attached thereto is obvious. Such separate trains may be required by the State in the exercise of reasonable supervision of the service, where it is necessary for the safety of passengers, without reference to the fact that the service may not be profitable, where the particular requirement is not of itself so unreasonable as to be an arbitrary burden put upon the carrier. The order of the railroad commissioners now

sought to be enforced merely requires the respondents to discontinue the hauling of freight cars on two designated regular trains carrying passengers. Under the statute this order is *prima facie* reasonable and just. Such a regulation is manifestly expedient if not essential to the safety and comfort of passengers, and this particular order appears to be reasonably necessary for the well-being of passengers, and not an unnecessary burden arbitrarily put upon the carrier. It does not appear that the order was made without a consideration of existing facts having relation to the action taken. The allegations admitted by the demurrer do not show unlawful or arbitrary action or abuse of discretion by the commissioners in ordering that the hauling of freight cars in the two designated trains that carry passengers shall be discontinued. If the business of the respondents is already unprofitable as asserted, they cannot justly complain of a reasonable regulation requiring them to perform a primary duty for the safety and comfort of passengers that the respondents as common carriers have voluntarily undertaken to transport by virtue of public franchises, which the State permits the carriers to use primarily and essentially for the beenfit of the public to be served. While the asserted losses to the carriers may be considered in determining the reasonableness of the order, yet as the duty required to be performed is primary and essential in its nature, and as the order is, even under the averments of the return, apparently not arbitrary or unreasonable, it may be enforced. See Missouri Pacific Ry. Co. v. State of Kansas *ex rel.* Railroad Commissioners, 216 U. S. 262, 54 Sup. Ct. Rep. (Law Ed.) 472; People *ex rel.* cantrell v. St. Louis A. & T. H. R. Co., 176, Ill., 51, 52 N. E. Rep. 292.

If a regulation requiring the running of separate pas-

senger and freight trains is necessary, or even expedient for the safety and comfort of passengers, it may be enforced if it is authorized and valid and is not unreasonable in its substance and effect, even if the existing rate of compensation for the service will be unreasonable because of added burdens to the carriers, the remedy of the carriers being an application for the allowance of more remunerative rates if that be necessary to do justice to the carriers, since the furnishing of adequate facilities for the safety and comfort of passengers is a primary duty and should have great weight in determining the reasonableness of rates.

The amended return in the form or in the substance of its averments is, in view of the nature of the duty commanded to be performed by the respondents, not sufficient as a defense to the portion of the writ that has been sustained by the court. It is, therefore, ordered that the demurrer to the amended return is sustained. A peremptory writ will issue commanding the respondents jointly and severally to discontinue the hauling of freight cars on the train leaving Jacksonville at 5 P. M. and arriving at Pensacola at 11:15 A. M. and known on the Seaboard Air Line Railway as train No. 79 and on the Louisville and Nashville Railway as train No. 4; and to discontinue the hauling of freight cars on the train leaving Pensacola at 5 P. M. and arriving at Jacksonville at 10:50 A. M. and known on the Louisville and Nashville Railway as train No. 1 and on the Seaboard Air Line Railway as train No. 78.

TAYLOR, SHACKLEFORD, COCKRELL and HOCKER, J.J., concur.