THE STATE OF FLORIDA *ex rel*. RAILROAD COMMISSIONERS, *Relators*, v. ATLANTIC COAST LINE RAILROAD COMPANY, *Respondent*.

1.  In determining whether a regulation of the railroad commissioners is so unreasonable and arbitrary as to be illegal and unenforceable, the courts, in deference to the governmental functions conferred by law upon the commissioners, will not only require the *prima facies* of reasonableness impressed by the statute upon the regulation, to be overcome by admissions or proofs, but will require the admissions or proofs of unreasonableness to be clear and convincing, every reasonable doubt being yielded in favor of the regulation.

2.  Where it appears from any view of the evidence that a carrier will make at least some profit by the application of a rate prescribed by the railroad commissioners to a particular special service if it is voluntarily rendered by the carrier, the rate may be enforced.

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the court.

*F. M. Hudson,* for Relators;

*W. E. Kay,* and *Doggett & Smith,* for Respondent.

WHITFIELD, C. J.—This mandamus proceeding was brought in this court to enforce the observance by the respondent railroad company of certain regulations of the railroad commissioners contained in Rule 15 A. of the following rules:

Rule 15. "A charge of not more than $2.00, per car, without regard to its weight or contents, will be allowed for transporting, switching or transferring a loaded car from any point on any railroad to any connecting railroad, or to any warehouse, side-track or other point of delivery that may be designated by the consignee, within a distance of three miles from the point of starting, and no railroad company shall decline or refuse to transport, switch or transfer any car as above, or, to receive it from any connecting railroad for such purposes. When in the transfer, switching or transportation of a car between such points, it is necessary to pass over the track or tracks of any intermediate railroad or railroads, said maximum charge of two dollars shall be equitably divided between the railroads at interest. When a charge is made for the transfer, switching or transportation of a loaded car between such points, no additional charge shall be made for the accompanying movement of the empty car in the opposite direction. Provided, That this rule shall not interfere with any prevailing legal rate for the transportation of freight between different stations; and shall not apply to any freight that does not pay a direct freight transportation charge in connection with a switching charge."

"Rule 15-A. The charge for switching cars of rough lumber consigned to and arriving at the City of Jackson-

ville from points in this State to any planing mill in the Jacksonville yards, and thence, after lumber is dressed to any point in the same yard, shall not be more than $2.00, per car; Provided, that when the said switching movement is over the tracks of more than one railroad, a charge of not more than $3.00, may be made. This rule shall not be interpreted as rescinding or modifying Rule 15 except as herein specifically provided."

The pleadings having been adjudicated at former hearings, State *ex rel.* Railroad Com'rs. v. Atlantic Coast Line R. Co., 59 Fla. 612, 52 South. Rep. 4; State *ex rel.* R. Com'rs. v. Atlantic Coast Line R. Co., 60 Fla. 218, 53 South. Rep. 601, the question here presented is whether the respondent has shown by evidence that the rule is invalid, and not applicable to it.

The contention of the respondent is that the evidence shows (1) that the respondent is not engaged in the service contemplated by Rule 15 A., and (2) that the enforcement of Rule 15 A. will in effect require the rendering of a service without reasonable compensation, and as a result will violate the property rights of the respondent that are secured by the Federal and State Constitutions.

When the respondent does not as a practically continuous transaction, interrupted only by the process of unloading and reloading at the mill, take a car arriving at Jacksonville from points in the State loaded with rough lumber, to a mill in the Jacksonville yards and there receive the same or the substitution car, loaded with dressed lumber, and transport it to another point in the same yards for the same consignee, Rule 15 A. does not apply. The reference in the rule to "tracks of more than one railroad," must mean the use of such tracks by the carrier performing service covered by the rule.

If the transportation movement that brings the car of

rough lumber to Jacksonville from originating points within the State, ends with the delivery of the car at a planing mill in the Jacksonville yards, the rule does not apply.

Rule 15 A. clearly contemplates a service in which cars loaded with rough lumber and arriving at Jacksonville from within the State, will transport the rough lumber to a planing mill in the railroad yards at Jacksonville, and that the same or substituted cars operated by the same carrier will transport the same or equivalent lumber in dressed form for the original consignee from the planing mill to points of ultimate delivery in the railroad yards at Jacksonville.

Unless the respondent is engaged in this service, the rule is not applicable.

There is testimony that when a consignee is advised by the railroad company of the arrival at Jacksonville of a car load of rough lumber consigned to him, it is on his order taken to the planing mill by the railroad company transporting it, and no charge therefor is made; that after the lumber is dressed, as a rule, it is transferred to another car for the convenience of the planing mill and the saving of time to the car, while at times "the dressed lumber is reloaded on the same car which contained the original load;" that after the dressed lumber is loaded on to the car, the railroad company on order moves it to the desired point and makes a charge of $5.00, therefor if it moves over the tracks of one railroad company, and a charge of $7.00, is made if the movement is over the tracks of two or more railroad companies. There is also testimony that this service is rendered and the stated charges made by the respondent.

On this testimony it must be held that the respondent does engage in the service covered by Rule 15 A. and has

violated the rule. It is contended that the evidence shows that the respondent delivers many more cars of rough lumber to the mills than it receives from the mills cars of dressed lumber for transportation to other points in the Jacksonville yards. Unless the service is rendered as above indicated Rule 15 A. does not apply.

On the motion to quash the alternative writ herein this court held that Rule 15 A. of the Railroad Commissioners of this State merely fixes a rate of compensation for moving cars of rough lumber consigned to and arriving at the City of Jacksonville from points in this State to any planing mill in the Jacksonville yards, and thence, after lumber is dressed to any point in said yards. This rule does not seek to compel a service.

The service contemplated by Rule 15 A. of the Railroad Commissioners of the State, is the movement of cars of lumber at Jacksonville to a planing mill in the Jacksonville yards for treatment, and thence after the lumber is dressed to another point in the railroad yards. This is in the nature of a special service which the carrier may engage in, but which service the shipper cannot, in the present state of the law, demand as a matter of lawful right.

The carrier is entitled as compensation, to a reasonable profit beyond the mere costs for the extra service rendered of moving cars loaded with rough lumber from points at Jacksonville to planing mills in the Jacksonville yards for treatment, and then thansporting and delivering the cars loaded with dressed lumber to the place of delivery in the yards of the carrier. See State *ex rel.* Railroad Commissioners v. Atlantic Coast Line R. R. Co., 59 Fla. 612, 52 South. Rep. 4. See, also, same case in 60 Fla. 218, 53 South. Rep. 601, where the answer of the respondent to the alternative writ was considered.

A reasonable compensation for service rendered as a common carrier is a property right of the respondent that is protected by the provisions of the State and Federal Constitutions. State *ex rel*. Railroad Commissioners v. Louisville & N. R. Co., 63 Fla. 274, 57 South. Rep. 673.

If the rate of compensation prescribed by Rule 15 A. for the special and specific service referred to, is shown by the evidence to be in fact so arbitrary, unreasonable and inadequate as to deny to the carrier a reasonable profit beyond the mere expenses incurred in rendering the extra specific service of moving cars arriving in Jacksonville loaded with intrastate shipments of rough lumber to a planing mill in the Jacksonville yards, and thence after the lumber is dressed to any point in the same yards, such rate will violate the respondent's property rights and the rate will not be enforced by the courts. Louisville & N. R. R. Co. v. Railroad Commissioners, 63 Fla. 491, 58 South. Rep. 543.

Any regulation promulgated and sought to be enforced by the Railroad Commissioners must be in accordance with the provisions and principles of law and must be reasonable and not merely arbitrary in its operation. Even though the statute makes the regulations of the Railroad Commissioners *prima facie* reasonable and just, such regulations are subject to appropriate judicial review as to matters that are not concluded by the exercise of administrative discretion.

In determining whether a regulation of the Railroad Commissioners is so unreasonable and arbitrary as to be illegal and unenforceable, the courts, in deference to the governmnetal functions conferred by law upon the Commissioners, will not only require the *prima facie* of reasonableness impressed by the statute upon the regulation, to be overcome by admissions or proofs, but will require

the admissions or proofs of unreasonableness to be clear and convincing, every reasonable doubt being yielded in favor of the regulation. State *ex rel.* Railroad Commissioners v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep. 175.

The reasonableness of a regulation is to be determined by a fair consideration of the rights of all the parties directly and materially affected thereby. This involves a consideration of all the pertinent facts and circumstances by such appropriate processes of standards of reasoning and computation as are afforded by law or by common experience and the dictates of right and justice. In determining whether the regulation affecting the particular special service in this case is in fact arbitrary and so unreasonable as to deny the carrier a reasonable profit beyond the expense of rendering the specific special service, the fair actual value of all the property, labor and management rightly used in rendering the service should be considered, computed and applied in the process of adjudication.

If it appears from a consideration of all the evidence that it is difficult to determine whether the prescribed rate of compensation will in fact produce a reasonable profit beyond the expense incurred in rendering the special service, so that competent men may reasonably differ in opinion as to the probable results, the statutory *prima facie* just and reasonable effect of the rate is not overcome by the required clear and convincing proofs. In such a case the matter is not concluded by the exercise of administrative discretion by the Commissioners in making the rate, but in view of the *prima facie* effect of the rate as fixed, and of the evidence showing room for reasonable difference of opinion among men competent

to act in such matters, the validity of the rate should be left to the test of fair experiment and experience. State *ex rel.* Railroad Commissioners v. Louisville & N. R. Co., 63 Fla. 274, 57 South. Rep. 673; Wilcox v. Consolidated Gas. Co., 212 U. S. 19, 29 Sup. Ct. Rep. 192, 53 L. Ed 382, 15 Ann. Cas. 1034; City of Louisville v. Cumberland Telephone & Telegraph Co., 224 U. S. 649, 32 Sup. Ct. Rep. 741.

In determining whether the rate of compensation prescribed for the service rendered under Rule 15 A. allows the carrier a reasonable profit beyond the mere cost of the service rendered, the real fair value of the property and labor used in rendering the service should be ascertained. This includes the fair value of property consumed in the use as well as the fair value of property used but not consumed in rendering the service, together with the fair value of the labor and management used in rendering the service. As the service is entirely performed in the railroads yards at Jacksonville, the fair value used in rendering the yard service as a whole may be considered in determining the values consumed or used in this particular service. If the service contemplated by the rules requires two movements of a loaded car for an average distance within the yard, and the expense of one such movement can be ascertained the problem is practically solved. The respondent argues that the conclusions expressed by witnesses competent to judge to the effect that the rate of compensation prescribed by Rule 15 A. for the service covered by it is inadequate to meet the cost of the service, thereby making a loss instead of a profit, establishes the invalidity of the rule. But as testimony of essential facts was taken and presented on this subject, it must be considered.

Upon the testimony the respondents contend that the average cost per day of one movement of a loaded car from one point to another point in the Jacksonville yards is 64.2 cents; while the relators claim it is 45 cents. To this the respondents add a per diem for the use of the car for 9.5 days pending the movement to the mill, the time for dressing and the last movement, thereby claiming the cost of the service contemplated by Rule 15A to be about $8.94; while the relators insist that the detention of cars for the service is not more than 2.39 days, and they compute the cost of the service to be not more than $1.392 which manifestly affords a profit.

Rule 15A does not contemplate that cars shall be unduly or unreasonably detained at the mills pending the process of unloading and reloading; and if such detention occurs and is not caused by the carrier or by *vis major* the carrier may be entitled to demurrage under appropriate rules.

Even if the daily cost of each movement is 64.2 cents and it takes two days to complete the two movements, the cost would be less than $2.00, for the service even allowing a per diem of 30 cents. If respondent's cars are unduly detained in rendering the service and the respondent or *vis major* is not responsible therefor, demurrage allowances would compensate.

Peremptory writ awarded.

Shackleford, Cockrell and Hocker, J. J., concur.

Taylor, J., absent on account of illness.